STATE OF NORTH CAROLINA v. THOMAS ALLEN HOSICK

No. 7118SC418

(Filed 4 August 1971)

1. Narcotics § 1— drug not listed in Uniform Narcotic Drug Act

In order for any drug not listed or described in the Uniform Narcotic Drug Act to be classified as a narcotic drug within the intent and meaning of the Act, it must be a drug to which the federal narcotic laws apply or a drug found by the State Board of Health, after reasonable notice and opportunity for hearing, to have an addiction-forming or addiction-sustaining liability similar to morphine or cocaine, or possess hallucinogenic properties similar to lysergic acid diethylamide.

2. Narcotics § 1— determination that drug is narcotic — authority of State Board of Health

Authority given the State Board of Health by G.S. 90-87(9) to determine that a drug is a narcotic drug is not an unconstitutional delegation of legislative authority.

3. Narcotics § 1— MDA as a narcotic — insufficiency of findings by State Board of Health

State Board of Health's passage of a motion "that the drug, Methylenedioxyamphetamine (MDA) be added to the list of drugs in the Uniform Narcotic Act" was insufficient to make MDA a narcotic drug under the provisions of G.S. 90-87(9), where there was no finding by the Board that MDA has an addiction-forming or addiction-sustaining liability similar to morphine or cocaine, or that it possesses hallucinogenic properties similar to lysergic acid diethylamide.

APPEAL by defendant from *Kivett, Judge,* 1 February 1971 Session of Superior Court for the trial of criminal cases held in GUILFORD County.

The indictment upon which defendant was tried contained two counts and read as follows:

"THE JURORS FOR THE STATE UPON THEIR OATH PRESENT, That THOMAS ALLEN HOSICK late of the County of Guilford on the 31st day of January 1970 with force and arms, at and in the County aforesaid, did unlawfully, wilfully, and feloniously have in his possession and under his control the narcotic drug, 3, 4—Methylenedioxyamphetamine, commonly known as MDA in violation of Chapter 90, Section 88, of the General Statutes of North Carolina, against the form of the statute in such case made and provided and against the peace and dignity of the State.

AND THE JURORS FOR THE STATE, UPON THEIR OATH, DO FURTHER PRESENT, That THOMAS ALLEN HOSICK late of the County and State aforesaid, on the day and date aforesaid, with force and arms, at and in the County aforesaid, did unlawfully, wilfully and feloniously sell to one Larry Sonberg, the narcotic drug, 3, 4—Methylenedioxyamphetamine, commonly known as MDA in violation of Chapter 90, Section 88, of the General Statutes of North Carolina, against the form of the statute in such case made and provided and against the peace and dignity of the State."

The jury returned a verdict of guilty as charged. From the imposition of judgment of imprisonment, the defendant appealed to the Court of Appeals.

*Attorney General Morgan and Staff Attorney Jones for the State.*

*J. Erle McMichael, Fred G. Crumpler, Jr., and Michael J. Lewis for defendant appellant.*

MALLARD, Chief Judge.

Before pleading the defendant moved to quash the bill of indictment on the grounds that "the drug, 3, 4—Methylenedioxyamphetamine (MDA) had not been referred to in the motion made by Dr. Baker at a hearing conducted by the North Carolina State Board of Health on December 4, 1969, as 3, 4—Methylenedioxyamphetamine (MDA) but had been referred to as Methylenedioxyamphetamine and that, therefore, the charge against the Defendant having to do with 3, 4—Methylenedioxyamphetamine (MDA) had not been outlawed by the action of the Board of Health on December 4, 1969, and therefore, no crime had been committed; and that notices given in the various newspapers concerning the hearing scheduled for the date of December 4, 1969, had not been reasonable and consequently that the Defendant had not had an opportunity to be present at the meeting of the State Board of Health on December 4, 1969, to be heard with reference to the question of whether or not 3, 4—Methylenedioxyamphetamine (MDA) is a narcotic drug."

On the motion to quash the following proceedings were held: A certified copy of the minutes of the State Board of

Health (with all nine members present) held on 4 December 1969 was marked State's Exhibit 1 and introduced into evidence without objection. The pertinent parts of these minutes read as follows:

"The next item on the agenda was a public hearing relative to the classification and legal status of the new drug, 3, 4—Methylenedioxyamphetamine (MDA). Mr. Charles Dunn, Director, State Bureau of Investigation, Dr. Peter N. Witt, Director of Research, Department of Mental Health, members of the staff of the SBI, and representatives from the Department of Mental Health were present. Dr. Peter Witt, of Mental Health, and Mr. William S. Best, Chief Chemist for the SBI, answered questions from the Board concerning the technical aspects of the drug. Mr. Dunn expressed appreciation for the opportunity of coming to talk about what he feels is a serious problem in North Carolina. He said: 'The State Bureau of Investigation believes that MDA is becoming a problem in North Carolina. We have had several cases of it in our Laboratory. We would like to point out that the findings of various individuals and groups indicate this is a dangerous drug. It is being sold and possibly manufactured in the State of North Carolina. At the present time we do not have the authority to cope with it legally.' Mr. Dunn explained that MDA is not now one of the drugs included in the registry of federally controlled drugs or one included in the Uniform Narcotic Act (90-86). Statute 90-87 (9) provides for the State Board of Health to determine that a particular drug has addiction forming or addiction sustaining liability or possesses halluncinogenic properties similar to lysergic acid diethylamide. Mr. Dunn wished to know whether the State Board of Health would make such a determination of MDA. Dr. Raper inquired if any member of the public wished to be heard concerning this matter. No one did, and the secretary was instructed to let the minutes show that no one was heard. Motion was made by Dr. Baker THAT THE DRUG, (3, 4—) METHYLENE-DIOXYAMPHETAMINE (MDA) BE ADDED TO THE LIST OF DRUGS IN THE UNIFORM NARCOTIC ACT (90-86). The motion was seconded by Dr. Dawsey and carried unanimously."

State v. Hosick

The State offered the testimony of Ben Eaton (Eaton) that State's Exhibit 1 is an exact copy of the minutes, and he also testified that State's Exhibit 2 is a copy of a certified abstract taken from these minutes. There is a difference between the two exhibits. In Exhibit 1 in the motion made by Dr. Baker, the figures "3, 4—" appear to be made with a ballpoint pen in handwriting before the word "Methylenedioxyamphetamine" and in Exhibit 2 these figures do not appear. Eaton testified that he was Director of Administrative Services Division, State Board of Health and that "(o)n Page 4, motion was made by Dr. Baker that the drug Methylenedioxyamphetamine (MDA) be added to the list of drugs in the Uniform Narcotic Act, and I have gone in there and writen '3, 4' to that. The minutes reflect March 5, 1970."

On cross-examination Eaton testified that the "3, 4—" was not added by the Board members, that he added this to the motion and does not know whether there is a difference between the drug "3, 4—Methylenedioxyamphetamine" and Methylenedioxyamphetamine. Eaton also testified that "the notices that were run in the newspapers, these notices referred to MDA, spelling it out, and then abbreviating it." This testimony is not corroborated by State's Exhibits 3, 4, 5 and 6 containing photocopies of the notices published. Each of these notices refers only to the "drug MDA" and does not spell it out. They were published on 29 November 1969, 1 December 1969, and 3 December 1969 in Raleigh, Charlotte and Greensboro, respectively. The four exhibits give notice of a public hearing on 4 December 1969 to consider the "drug MDA as to addiction-forming or addiction-sustaining qualities or possessing hallucinogenic properties."

The State further offered the testimony of Dr. Peter Witt who testified that he was a medical doctor, Director of Research for the North Carolina Department of Mental Health, and a lecturer of Pharmacology at the University of North Carolina at Chapel Hill. He said: "There would be a great difference between 3, 4—Methylenedioxyamphetamine or 1, 2— Methylenedioxyamphetamine, or 5, 6—Methylenedioxyamphetamine." But Dr. Witt stated that he would not have any doubt at all as to what was being referred to in the notice.

There was no further evidence offered on the motion to quash. The court denied the motion after finding, among other things, that at the meeting on 4 December 1969, the members of the State Board of Health, in using the word "Methylene-dioxyamphetamine," had "in mind 3, 4—Methylenedioxy-amphetamine (MDA)," that reasonable notice was given of the meeting, and that the State Board of Health "added that day the drug '3.4—Methylenedioxyamphetamine' (MDA) to the list of drugs proscribed in the Uniform Narcotic Act under G.S. 90-87(9)."

The defendant assigns as error the failure to quash the bill of indictment.

G.S. 90-87(9), which is part of the Uniform Narcotic Drug Act, defines narcotic drugs in the following language:

> " 'Narcotic drugs' means coco [coca] leaves, opium, opium poppy, cannabidial, tetrahydro-cannabinol, cannabis, peyote, mescaline, psilocybe mexicana, psilocybin, lysergic acid diethylamide, or other psychedelic drugs or hallucinogens, or any derivatives of any of these which possess hallucinogenic properties, and every other substance neither chemically nor physically distinguishable from them; and other drugs to which the federal narcotic laws may now apply; and any drug found by the State Board of Health, after reasonable notice and opportunity for hearing to have an addiction-forming or addiction-sustaining liability similar to morphine or cocaine, or possesses hallucinogenic properties similar to lysergic acid diethylamide, from the effective date of determination of such finding by said State Board of Health."

[1] The Uniform Narcotic Drug Act does not specifically list MDA as a narcotic drug. According to the minutes of the State Board of Health, MDA was not included in the registry of federally controlled drugs, and in this case the State relied upon the action of the State Board of Health to bring MDA under the classification of a narcotic drug. In order for any drug not listed or described in the Uniform Narcotic Drug Act to be classified as a narcotic drug within the intent and meaning of the Act, it must be a drug to which the federal narcotic laws applied or be a drug *found* by the State Board of Health, *after reasonable notice* and *opportunity for hearing,* to have an *addiction-forming* or *addiction-sustaining* liability similar to

*morphine* or *cocaine,* or *possess hallucinogenic properties* similar to *lysergic acid diethylamide.* It then becomes, by virtue of the statute, a narcotic drug from the effective date of such *determination* or finding.

[2]  The Legislature in G.S. 90-87(9) delegated to the State Board of Health the power and authority to find facts. We hold that the standards set out therein are sufficient and that this is not an unconstitutional delegation of legislative authority. *Coastal Highway v. Turnpike Authority,* 237 N.C. 52, 74 S.E. 2d 310 (1953); 1 Am. Jur. 2d, Administrative Law, § 111, p. 910; 1 Am. Jur. 2d, Administrative Law, § 117, p. 923.

[3]  However, in the case at bar the minutes of the State Board of Health do not show that there was a *finding* or *determination* by the State Board of Health that MDA had an addiction-forming or addiction-sustaining liability similar to morphine or cocaine. Neither was there a *finding* or *determination* that it possessed hallucinogenic properties similar to lysergic acid diethylamide. Absent such a finding or determination, MDA was not a narcotic drug as defined in the Uniform Narcotic Drug Act. The action of the State Board of Health, in passing the motion "that the drug, Methylenedioxyamphetamine (MDA) be added to the list of drugs in the Uniform Narcotic Act (90-86)," is insufficient to make MDA a narcotic drug under the provisions of G.S. 90-87(9) and bring it within the list of drugs classified as narcotic drugs under the provisions of the Uniform Narcotic Drug Act. Therefore, the indictment does not charge a crime. The trial judge's conclusion that the State Board of Health added "the drug '3, 4—Methylenedioxyamphetamine to the list of drugs proscribed in the Uniform Narcotic Act under G.S. 90-87(9)" is not supported by the evidence and the record, and the trial judge committed error in failing to quash the bill of indictment.

In view of the above, we do not discuss or decide whether the notice that was given was "reasonable notice" as required by G.S. 90-87(9), whether the provisions of G.S. 143-195 were complied with, whether the provisions of G.S. 143-198.1 were applicable, or any of defendant's other assignments of error.

The judgment of the superior court is vacated.

Judgment arrested.

Judges CAMPBELL and HEDRICK concur.