STATE *ex rel.* TOM SCOTT

*v.*

ROBERT C. CONATY, *Judge, etc., et al.*

(No. 13114)

Submitted January 12, 1972.     Decided March 7, 1972.

*Herbert H. Henderson,* for relator.

*Chauncey H. Browning, Jr.,* Attorney General, *Willard A. Sullivan, Richard E. Hardison,* Assistant Attorneys General, for respondents.

CARRIGAN, JUDGE:

In this proceeding the relator, Tom Scott, seeks a writ of prohibition to prevent his prosecution in the Common Pleas Court of Cabell County upon five indictments returned by the grand jury on September 16, 1970, two of which, Nos. 8571 and 8575, charge him with violations of Chapter 16, Article 8B, Code of West Virginia, 1931, as amended. Said two numbered indictments, hereinafter designated the 8B indictments, charged the relator with "unlawfully and feloniously" having in his possession on August 28, 1970, and August 24, 1970, respectively, a quantity of dangerous drugs, to-wit: "lysergic acid diethylamide, commonly known as LSD." Indictments numbered 8570 and 8572, hereinafter designated 8A indictments, alleged that the relator did "unlawfully and feloniously have in his possession a narcotic drug, to-wit, cannabis, commonly known as marijuana" on August 24, 1970, and August 28, 1970, respectively. The fifth indictment, numbered 8573, likewise hereinafter designated an 8A indictment, alleged that on August 24, 1970, the relator "did unlawfully and feloniously sell" the narcotic drug, cannabis, commonly known as marijuana.

The relator seeks to prohibit his prosecution under the foregoing indictments on the ground that the statutes defining the offenses charged against the relator are unconstitutional and therefore void.

Relator assigns the following as grounds for his contention that the statutes are unconstitutional:

(1) The 8B indictments are under a statute which attempts to impose regulations that are promulgated *in futuro ad infinitum;*

(2) The 8B indictments attempt to classify the offenses as felonies, when in fact, they are misdemeanors;

(3) The 8B indictments fail to fully and plainly inform relator of the character and cause of the accusation;

(4) The 8A indictments violate the First and Fourteenth Amendments of the United States Constitution and

(5) The 8A indictments violate the Eighth Amendment of the United States Constitution.

Attention is called to the fact that Articles 8A and 8B, Chapter 16, Code of West Virginia, 1931, as amended, hereinafter referred to in this opinion, were those in effect at the time of relator's arrest and the indictment in 1970; and that these Articles, 8A and 8B, were repealed by Chapter 54, Acts of the West Virginia Legislature, Regular Session, 1971, effective June 10, 1971, which Chapter 54, known as the "Uniform Controlled Substances Act" is now set forth in Chapter 60A of the Code.

On December 14, 1970, the relator filed a motion in the Common Pleas Court of Cabell County to quash the indictments on essentially the same grounds as here presented in his petition seeking the writ of prohibition. Following arguments on said motion the Judge of said court overruled the motion to quash and scheduled the relator to stand trial on said indictments, passing by the scheduled date of July 28, 1971, however, to permit relator to petition this Court for the writ of prohibition.

A rule to show cause was awarded by this Court on June 29, 1971, returnable September 1, 1971, but the proceeding was continued generally. The respondent filed his answer and demurrer, and oral argument was held on January 12, 1972, the basic issue being whether the statutes under which relator was indicted are unconstitutional.

Relator contends that the 8B indictments are unconstitutional in that they impose criminal sanctions by regulations promulgated *in futuro ad infinitum.*

Subsection 1 of Section 1 of Article 8B defines the term "dangerous drug or drugs" as used in this Article as follows:

"(1) The term 'dangerous drug or drugs' means (a) the salts and derivatives of barbituric acid or compounds, preparations or mixtures thereof; (b) any derivative of barbituric acid which has been designated by the State board of pharmacy as being habit forming; (c) any drug which contains any quantity of amphetamine or any salt of amphetamine or any salt of an optical isomer of amphetamine or any substance which the State board of pharmacy, after investigation, has found to be, and by regulation designated as habit forming because of its stimulant effect on the central nervous system; and (d) any drug which, under the regulations promulgated in accordance with the Federal Food, Drug and Cosmetic Act of June, twenty-five, one thousand nine hundred thirty-eight, or any amendment thereto, is designated as dangerous or habit forming; Provided, that the term 'dangerous drug' shall not include any drug the manufacture or delivery of which is regulated by the narcotic laws of the United States or of this State: Provided, however, that any drug, compound, preparation or mixture containing the salts or derivatives of barbituric acid may be exempted from the provisions of this article by regulations promulgated by the State board of pharmacy and if so exempted, shall not be subject to the provisions of this article; . . . ."

Relator contends that the delegation under (c) was an unconstitutional delegation of legislative authority; that the incorporation by reference under (d) of the Federal Food, Drug and Cosmetic Act regulations is void for indefiniteness in that they are subject to constant change, so that it would be necessary to look to the federal regulations from time to time to determine if the West Virginia law was being violated; and that LSD is not habit forming nor addictive and therefore does not meet the standards of dangerous drug or drugs as set forth in Subsection 1 above.

A certified copy of the rules and regulations adopted by the Board of Pharmacy pursuant to Article 8B, Chapter 16, on March 8, 1968, and filed in the office of the Secretary of State on March 11, 1968, are filed with the answer

of respondent. These rules and regulations list numerous drugs, including lysergic acid diethylamide and LSD, and also contains the statement by the Board of Pharmacy that these drugs have a potential for abuse of "their depressant or stimulant effect on the central nervous system" and at the end of the list of drugs the regulations state:

> "Now, therefore, be it enacted that the above defined and described drugs are henceforth *to be considered dangerous or habit forming* drugs in the State of West Virginia and therefore the use of such drugs shall be regulated by and be subject to the sanction of Chapter 16, Article 8-B of the West Virginia Code of 1931 as amended." [Emphasis added.]

Relator relies upon the case of *State of South Dakota v. Johnson,* 84 S.D. 556, 173 N.W.2d 894 (1970), holding an act of the legislature unconstitutional which attempted to adopt regulations promulgated under the Federal Food, Drug and Cosmetic Act defining certain drugs, including LSD, as having potential for abuse.

The *Johnson* case, *supra,* based its decision on the fact that the South Dakota State Drug Abuse Control Act attempted to adopt not only existing federal regulations promulgated under the Federal Food, Drug and Cosmetic Act, but all amendments thereto, thus attempting to adopt future federal acts and future federal regulations. In the *Johnson* case, the court recognized the well-settled rule that statutes adopting laws or regulations of the federal government effective at the time of enactment of the statute adopting the same, are valid.

This Court has passed upon and recognized the right of the Legislature to delegate its police powers to regulate certain matters to boards and commissions under standards prescribed in the statute or inherent in the subject matter, and wider latitude is given to such delegation of power where public health, morals, safety and welfare are involved. This is particularly true where, as

in the case of drugs, the expertise of a board or commission is required in a specific scientific field. See *Quesenberry* v. *Estep*, 142 W.Va. 426, 95 S.E.2d 832 (1956).

Relator also contends that lysergic acid diethylamide is not habit forming nor addictive and that federal regulations classify this drug as having an "hallucinogenic effect", and that therefore this drug does not meet the legislative standard set for the use of the Board of Pharmacy.

The Board of Pharmacy is not required to determine the hallucinogenic effect of LSD but merely to determine and designate, in its expert opinion, whether or not the drug is dangerous and habit forming because of its effect on the central nervous system, and this the Board of Pharmacy has done by their regulations as required by statute.

The penalty upon conviction of possession of lysergic acid diethylamide is contained in Section 6, Article 8B, Chapter 16, and reads as follows:

> "Any person violating any provision of this article shall, upon conviction, be punished by a fine not exceeding one thousand dollars, or by imprisonment for not less than one nor more than five years, or both, and for a second and each subsequent offense by a fine not exceeding ten thousand dollars, or by imprisonment for not less than two nor more than ten years, or both."

Relator objects that the indictments are for felonies, when the punishment is for a misdemeanor. Proceedings for a felony must be by indictment. Prosecution for misdemeanors may be by either presentment or indictment. Article III, Section 4, Constitution of West Virginia; Section 1, Article 2, Chapter 62, Code of West Virginia, 1931, as amended; *State* v. *Lucas*, 129 W.Va. 324, 40 S.E.2d 817 (1946); *State ex rel. McGilton* v. *Adams*, 143 W.Va. 325, 102 S.E.2d 145 (1958). It is absolutely necessary in West Virginia to include "feloniously" in any indictment for a felony. See *State* v. *Whitt*, 39 W.Va. 468, 19 S.E. 873 (1894); *State ex rel. Vandal* v. *Adams*, 145 W.Va. 566, 115 S.E.2d 489 (1960); *State ex rel. Reed* v. *Boles*, 148 W.Va.

770, 137 S.E.2d 246 (1964) and *State ex rel. Harding* v. *Boles,* 150 W.Va. 534, 148 S.E.2d 169 (1966).

It is true that the hereinbefore quoted Section 6 provides the penalty but not the place of confinement for conviction of possession of lysergic acid diethylamide. However, the question of the sentence imposed upon relator is not now before us, since relator has not yet been tried or convicted.

An indictment purporting to charge a felony, which is not sufficient for that purpose but which contains sufficient allegations to charge a misdemeanor, should be regarded as an indictment for a misdemeanor. The use of the word "feloniously" may be considered as surplusage, and the indictment will be considered valid. See *State v. Justice,* 130 W.Va. 662, 44 S.E.2d 859 (1947) and *State ex rel. Cogar* v. *Haynes,* 154 W.Va. 805, 180 S.E.2d 492 (1971).

An examination of the 8B indictments, filed with the petition herein, shows that these indictments specify that relator is charged with possession of lysergic acid diethylamide, which the State Board of Pharmacy, after investigation, has found to be and by regulation, properly filed, has designated as habit forming because of its stimulant effect on the central nervous system, and the indictment further negatives relator's right to possess such drugs under any exemption contained in the statute. The language of these 8B indictments is virtually that of the statute, and we find it sufficient to fully and plainly inform relator of the character and cause of the accusations made against him, as required by Section 14, Article III of the Constitution of West Virginia.

Relator contends that the 8A (cannabis or marijuana) indictments violate the First and Fourteenth Amendments of the Constitution of the United States. Relator relies upon *Griswold* v. *Connecticut,* 381 U.S. 479, 14 L. Ed. 2d 510, 85 S. Ct. 1678 (1965); *People* v. *Woody,* 40 Cal. Rptr. 69, 394 P.2d 813 (1964) and *In re Klor,* 51 Cal. Rptr. 903, 415 P.2d 791 (1966). The *Griswold* case dealt with regulation of birth control activities by a criminal statute and

is distinguishable from relator's case in that it dealt with regulation of marital relations, a matter of personal and private concern and not a matter affecting public health and welfare. The *People* v. *Woody* case dealt with Indians using peyote in certain religious services. Surely relator does not claim that he possessed cannabis for such purpose. The *In re Klor* case dealt with a conviction for showing obscene movies in the prisoner's home, a place of privacy and not affecting public health and welfare.

There is nothing in either the First or Fourteenth Amendments which would prohibit the State of West Virginia from enacting a criminal penalty for possession of cannabis.

Relator also charges that the 8A indictments violate the Eighth Amendment to the United States Constitution and cites several federal cases holding that mere addiction to drugs or alcohol is not a crime. These cases are clearly distinguishable from the charge against relator.

Relator also contends that cannabis is not a narcotic in fact even though the Article 8A classifies it as such. Authority for relator's contention is *People* v. *McCabe,* (Ill., 1971) 275 N.E.2d 407, in which it appears that court compared the length of sentence to be imposed for various drug law offenses and concluded that the difference in length of the sentences constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. Such a holding fails to recognize the power of the legislature to legislate the penalty for a crime.

As Chief Justice Underwood states in his dissent in the above-cited *McCabe* case: ". . . few rules of law are more soundly bottomed than that which proscribes judicial interference with legislative discretion." To follow the logic, if possible, of the *McCabe* case would eventually result in the penalty for all crimes being exactly the same.

We feel that the ruling in the *McCabe* case, if we should choose to follow it, is not applicable in this State inasmuch

as the provisions of Chapter 60A, our "Uniform Controlled Substances Act" now in effect, provides in Section 601, Article 6, Chapter 60A, Code of West Virginia, 1931, as amended, for imposition of lesser penalties in certain instances even though the offense was committed during the time the former drug statute was in effect.

For the foregoing reasons, the writ of prohibition prayed for is denied.

*Writ denied.*