564 P.2d 968

**The STATE of Idaho, Plaintiff-Appellant,**

v.

**Cyrus MAXFIELD,
Defendant-Respondent.**

**No. 12026.**

Supreme Court of Idaho.

April 6, 1977.

Rehearing Denied June 20, 1977.

Wayne L. Kidwell, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Alan D. Cameron, and William A. McCurdy, Deputy Pros. Attys. (Sp. Asst. Attys. Gen.), Boise, for plaintiff-appellant.

Stanley D. Crow, Boise, for defendant-respondent.

McFADDEN, Chief Justice.

Defendant-respondent Cyrus Maxfield is a naturopathic physician,[1] charged by information with four counts of practicing medicine without a license. In a "Motion to Dismiss or Quash Information and Complaint," Maxfield sought to have the applicable statute, I.C. § 54–1803, declared unconstitutionally vague. The trial court granted the motion and the state has appealed. We reverse.

After a preliminary hearing, defendant was bound over to the district court on four counts of practicing without a license and one count of illegal possession of a controlled substance with intent to deliver; a corresponding information was filed, naming specific individuals, times and places. A "Motion to Dismiss or Quash Information and Complaint" challenging the practicing without a license counts was filed by Maxfield on July 21, 1975. The trial court issued a memorandum decision and order granting the motion. The four counts of practicing medicine without a license were dismissed, and the state has perfected this appeal.

Count 1 of the information alleges that Maxfield performed a pap smear, blood pressure test, cardiogram test, and inserted a needle into the patient to withdraw blood. Count II alleges that he performed a pelvic examination and inserted a needle into the patient to withdraw blood. Count III alleges that he delivered a baby and made incisions and stitches on the patient. Count IV alleges that he performed a pelvic examina-

---

1. The parties stipulated that Maxfield is a practicing naturopathic physician. An uncontroverted affidavit submitted by Maxfield states that he has practiced for 23 years, and has been an instructor in anatomy, obstetrics and gynecology at the National College of Naturopathic Medicine. He is a member of the National Association of Naturopathic Physicians and Idaho Association of Naturopathic Physicians, Inc.

tion, pap smear, cardiogram test, and inserted a needle to withdraw blood. All counts alleged that Maxfield, in performing the acts, did "knowingly, wilfully, intentionally and unlawfully practice medicine," by "investigating, diagnosing and treating" ailments "as is commonly done by physicians and surgeons."

On appeal, the state contends that the actions of Maxfield may be, and are, proscribed by I.C. § 54–1803.[2] It is the State's further position that there is no necessity at this time for this court to define the parameters of the practice of naturopathy. Ultimately, the State maintains that I.C. § 54–1802(a) establishes the bounds of the practice of medicine, and that anyone who engages in the practices there defined must be licensed under I.C. § 54–1803.

On the other hand, the respondent asserts that under the ruling of this court in *State v. Smith*, 81 Idaho 103, 337 P.2d 938 (1959), the practice of naturopathy is a constitutionally protected right, and that one who practices naturopathy cannot be required to procure a license to practice medicine. In effect, we understand the respondent's posi-tion to be that if a particular technique is utilized by a naturopath, regardless of whether it would fall within the ambit of the practice of medicine as defined by the statute, that naturopath cannot be prosecuted.

The trial court took the position that the statute is unconstitutionally vague by reason of the fact that under *State v. Smith*, the practice of naturopathy is constitutionally protected. Absent a statutory definition of naturopathy, the trial court held that there is no way to determine where the protected practice of naturopathy and the practice of medicine overlap.

■ *State v. Smith* articulated several principles previously propounded by this court. The right to follow a recognized occupation is a right protected by the constitutional guarantees of liberty. Fourteenth Amendment, United States Constitution; Idaho Constitution, Art. I, sec. 13. A calling may not be prohibited unless it is inherently injurious to the public health, safety or morals, or unless it has a tendency in that direction. *State v. Armstrong*, 38 Idaho 493, 225 P. 491 (1923); *State v. Fite*,

2. I.C. § 54–1803 provides:

"*Unlawful to practice without a license—Penalties.*—(a) It shall be unlawful for any person to practice medicine or surgery or osteopathic medicine and surgery or osteopathy in this state unless he shall, at the time he engages in such practice, hold a valid, unrevoked and unsuspended license to do so, obtained as provided in this act; provided, however, that the provisions of this section shall not apply to the rendition of emergency service in cases of emergency where no fee or other consideration is charged or received.

(b) any person practicing medicine and surgery, osteopathic medicine and surgery or osteopathy within the state without having obtained the license herein provided for shall, upon conviction thereof, be imprisoned in the county jail for not more than one (1) year or shall be fined not less than three hundred dollars ($300) nor more than one thousand dollars ($1,000), or shall be punished by both such fine and imprisonment. Each day such person continues to practice medicine and surgery, osteopathic medicine and surgery or osteopathy contrary to the provisions of this act shall constitute a separate offense. * * *."

Those acts which are considered to be the practice of medicine are set forth in I.C. § 54–1802(a):

"*Definitions.*—(a) Any person shall be regarded as practicing medicine and surgery and osteopathic medicine and surgery and osteopathy who shall advertise in any manner, or hold himself or herself out to the public, as a physician and surgeon, osteopathic physician and surgeon, doctor of osteopathy, or any of them, or who shall investigate, diagnose or treat, or offer to investigate, diagnose or treat, any physical or mental ailment or disease, real or imagined, of any person with a view to relieving the same as is commonly done by physicians and surgeons, osteopathic physicians and surgeons and doctors of osteopathy, or suggest, recommend, prescribe or direct for the use of any person, sick, injured or deformed, any drug, medicine, means or appliance for the intended relief, palliation or cure of the same, or who shall suggest, recommend, prescribe or direct an operation on any such sick, injured or deformed person or who shall perform, or offer to perform, any such operation whether or not such person receives therefor, either directly or indirectly, any fee, gift or compensation of any kind whatsoever or in any manner whatsoever * * *."

29 Idaho 463, 159 P. 1183 (1916). Maxfield reasserts these propositions, and we agree that they remain viable. Maxfield then points to language in the opinion which provides that "So far as Section 54–1802, I.C., affects the practice of naturopathy, the act is unconstitutional and void," and contends that he is protected from regulation because he is engaged in the practice of naturopathy. If that language is taken at face value and is deemed controlling, then Maxfield's argument would be meritorious. However, we disagree with this proposition; careful analysis reveals that the cited language is overly broad, and is incorrect.[3]

It should first be noted that although the cited sentence does seem to prohibit regulation of naturopahy, that is not the thrust of the case. The case also notes that

"Nothing is indicated which would justify prohibiting naturopathy. And appellant disclaims any such intention on the part of the legislature. Naturopathy does bear some relation to the public health, and there can be no question but that the legislature has power to regulate callings related to public health."

The court concluded that the system of naturopathy described therein was not "inherently injurious," and did not have a tendency that way. Further, the court noted that

"To require one desiring to engage in the practice of naturopathy to meet the requirements prescribed for physicians and surgeons would be an unreasonable regulation of a recognized calling, unnecessary for the public's protection."

■ This comment is based on the assumption engaged in by the court in *Smith* that naturopathy as described therein did not include techniques generally accepted as being a part of the practice reserved to physicians and surgeons. In the context of the instant case, we find this assumption to be unwarranted. It is thus the conclusion of the court that the broad conclusion reached in *Smith* that the application of I.C. § 54–1802 to naturopathy is unconstitutional is incorrect. If it can be shown that the practices which a naturopath uses are proscribed in I.C. § 54–1802 to anyone who is not a physician or surgeon, then that naturopath is in direct violation of the provisions of the statute unless he holds a license pursuant to the physician licensure statute. It should be noted that the court below did not conclude that I.C. § 54–1802 is vague standing alone, and we do not address that issue here.

The important difference between *Smith* and the instant case is that in *Smith* the court was confronted with an attempt to enjoin Smith from holding himself out and advertising that he was a naturopathic physician. The court ultimately held that the naturopath could not be so enjoined. In that case, there were no specific practices involved which might encroach upon the practices proscribed in I.C. § 54–1802. The court there looked to a dictionary definition and described naturopathy as:

"a system of physical culture and drugless treatment by methods supposed to simulate or assist nature or to the use of physical forces such as air, light, water, heat massage and other similar materia medica."

Such a system, the court concluded, could not be inherently injurious. In the instant case, however, the complaint lists several specific procedures. The procedures are sufficiently specific to allow a conclusion as to whether or not they fall within the parameters of practice of medicine as defined

---

3. In a wide range of contexts, several jurisdictions concluded that the practice of naturopathy is properly regulated under statutes requiring licensure to practice medicine, thus indicating that the practice of naturopathy constitutes the practice of medicine. *State v. Errington,* 317 S.W.2d 326 (Mo.1958); *State v. Scopel,* 316 S.W.2d 515 (Mo.1958); *Aitchison v. State,* 204 Md. 538, 105 A.2d 495 (1954); *Hahn v. State,* 322 P.2d 896 (Wyo.1958); *Shenk v. State Board of Examiners in Basic Sciences,* !89 Minn. 1, 250 N.W. 353 (1933); *Davis v. Beeler,* 185 Tenn. 638, 207 S.W.2d 343 (1947); *Hitchcock v. Collenburg,* 140 F.Supp. 894, aff'd 353 U.S. 919, 77 S.Ct. 679, 1 L.Ed.2d 718 (D.C.Md.1956); *Dantzler v. Callison,* 230 S.C. 75, 94 S.E.2d 177 (1956). *Smith v. State Board of Medicine,* 74 Idaho 191, 259 P.2d 1033 (1953). *But see, State v. Smith, infra.*

in the statute; in this, the instant case differs materially from *Smith.*

While naturopathy in the abstract, as defined in *Smith,* may pose no significant threat to the public safety, specific procedures employed by a naturopathic physician may be very dangerous. Thus, it is not the name given to the practice that is important, but rather the type of procedures employed. What one does, and not what one calls himself, determines whether he is practicing medicine. *Smith v. State Board of Medicine,* 74 Idaho 191, 194, 259 P.2d 1033 (1953). What Maxfield calls his practice is irrelevant.

It should be noted that no issue was presented as to the sufficiency of the allegations in the information. It remains, of course, for the State at trial to prove the allegation in the information that Maxfield did practice medicine illegally under the language in I.C. § 54–1802(a).

The judgment of dismissal of the district court is reversed and the cause is remanded for further proceedings.

DONALDSON, SHEPARD, BAKES and BISTLINE, JJ., concur.