568 P.2d 514

The STATE of Idaho, Plaintiff-Appellant, Cross-Respondent,

v.

Roscoe A. KELLOGG, Defendant-Respondent, Cross-Appellant.

No. 12291.

Supreme Court of Idaho.

Aug. 30, 1977.

Wayne L. Kidwell, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for plaintiff-appellant, cross-respondent.

Stanley D. Crow, Boise, for defendant-respondent, cross-appellant.

SCOGGIN, District Judge.

Defendant-respondent Roscoe A. Kellogg was charged with the offense of selling a prescription drug, prednisolone, without legal authority to do so, in violation of I.C. § 37–2210. On defendant's motion, the district court dismissed the information, holding that the statutory procedure by which a drug is classified as a prescription drug constitutes an unconstitutional delegation of legislative authority in violation of Idaho Constitution Art. 2, § 1, and Art. 3, § 1. The state appeals, arguing that there is no improper delegation. Defendant raises two additional issues on cross-appeal. Defendant contends that the state has failed to show that prednisolone is a prescription drug, and that because he is a naturopathic physician, he is entitled to dispense prescription drugs under the terms of the statute. We reverse and remand.

## DELEGATION OF LEGISLATIVE AUTHORITY

■ Idaho Code § 37–2210 provides:

"Sale of drugs by unauthorized persons—Penalty.—No person except a physician, dentist, podiatrist, osteopath, pharmacist, registered nurse, wholesaler or manufacturer acting within the scope of his profession or occupation shall sell, dispense, give away or otherwise dispose of drugs required by the laws of this state or of the United States, or by the rules and regulations of the board, to be sold on a prescription order. Any person violating the provisions of this section shall be guilty of a felony, and on conviction thereof shall be imprisoned in the state penitentiary for a term of not to exceed three (3) years, or by a fine of not more than $5,000 or by both such fine and imprisonment."

The statute does not specify which drugs shall require a prescription order, but instead conditions that status upon three possible alternatives: (1) another state law, (2) a law of the United States, or (3) a rule or regulation of the Idaho Board of Pharmacy. There is apparently no other state law which defines prescription drugs. Under federal law, a prescription is required for some drugs by 21 U.S.C. § 353(b)(1).[1] Idaho Board of Pharmacy regulation No. 18–669–181 requires prescription for some drugs, but defers to federal law to define which drugs require prescription.[2]

1. 21 U.S.C. § 353(b)(1) provides:
   "(b)(1) A drug intended for use by man which—
   (A) is a habit-forming drug to which section 352(d) of this title applies; or
   (B) because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to administer such drug; or
   (C) is limited by an approved application under section 355 of this title to use under the professional supervision of a practitioner licensed by law to administer such drug, shall be dispensed only (i) upon a written prescription of a practitioner licensed by law to administer such drug, or (ii) upon an oral prescription of such practitioner which is reduced promptly to writing and filed by the pharmacist, or (iii) by refilling any such written or oral prescription if such refilling is authorized by the prescriber either in the original prescription or by oral order which is reduced promptly to writing and filed by the pharmacist. The act of dispensing a drug contrary to the provisions of this paragraph shall be deemed to be an act which results in the drug being misbranded while held for sale."
   Federal regulation of drug status is exercised pursuant to labeling statutes, so that a drug which is required to bear a label warning against dispensing without a prescription cannot be lawfully sold without prescription without being in violation of the branding statutes.

2. Idaho Board of Pharmacy regulation No. 18–669–181 provides:
   " 'LEGEND DRUGS.' A legend drug is one which contains on its immediate, original container, the legend 'Caution: Federal Law Prohibits Dispensing Without Prescription.' This is a drug intended for use by ma[n] or animal, which is a habit-forming drug or one

In practice then, the only method by which a drug may become a prescription drug in Idaho is by the operation of federal law. The Commissioner of the United States Food and Drug Administration currently decides for the federal government which drugs are to be so regulated. *National Nutritional Foods Ass'n v. Weinberger*, 512 F.2d 688 (2d Cir. 1975).

Defendant maintained at trial that the legislature, by assigning the responsibility for determining prescription drug status to the Board of Pharmacy and to the federal government, improperly delegated its legislative authority. The trial court agreed and dismissed the information on that basis.

▮ In considering whether a legislative delegation of decision making authority is constitutionally proper, this court held in *Boise Redevelopment Agency v. Yick Kong Corp.*, 94 Idaho 876, 499 P.2d 575 (1972) that:

> "It is clear that the legislative power of the state is by our Constitution vested in the Senate and House of Representatives and it is a fundamental principle of representative government that, except as authorized by organic law, the legislative department cannot delegate any of its power to make laws to any other body or authority. *Local Union 283, International Brotherhood of Electrical Workers v. Robison*, 91 Idaho 445, 423 P.2d 999 (1967); *State v. Purcell,* 39 Idaho 642, 228 P. 796 (1924); *State v. Nelson*, 36 Idaho 713, 213 P. 358 (1923). It is also clear, however, as stated in *Foeller v. Housing Authority of Portland*, 198 Or. 205, 256 P.2d 752, 780 (1953), that:

> subject to abuse as determined by the secretary of Health, Education and Welfare, or a drug, because of its toxicity or other potentiality for harmful effect or the method of its use or the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by the law to administer such drug or a drug which is limited by an approved application to the Secretary of Health, Education and Welfare, to use under the professional supervision of a practitioner licensed by law to administer such drug, and shall be dispensed only upon a written prescription of a practitioner li-

> 'Although the legislature cannot delegate its power to make a law or complete one, it can empower an agency or an official to ascertain the existence of the facts or conditions mentioned in the act upon which the law becomes operative.

> ' " * * * If the rule were otherwise, the legislature would indeed be at a great disadvantage in solving many of the complex and difficult problems with which it is confronted."

> ' * * *

> ' "The legislature must itself fix the condition or event on which the statute is to operate, but it may confide to some suitable agency the fact-finding function as to whether the condition exists, or the power to determine, or the discretion to create, the stated event. The nature of the condition is broadly immaterial." ' "

See also, *Board of County Comm'rs v. Idaho Health Fac. Auth.*, 96 Idaho 498, 531 P.2d 588 (1975). In deciding whether a delegation is proper the court's evaluation must be "tempered by due consideration for the practical context of the problem sought to be remedied, or the policy sought to be effected." *Dept. of Citrus v. Griffin*, 239 So.2d 577 (Fla.1970). Regulation of drugs demands particular regard for practical considerations.

> "In the area of drug regulation, delegations have been generally sustained despite broad standards of discretion. 1 Sutherland, Statutory Construction § 317 (3d ed. 1943). This must necessarily be so, for with new drugs being discovered and introduced at an unprecedented rate,

> censed by law to administer such drug, or upon an oral prescription of such practitioner which is reduced promptly to writing and filed by the pharmacist, or by refilling any such written or oral prescription if such refilling is authorized by the prescriber, either in the original prescription or by oral order which is reduced promptly to writing and filed by the Pharmacist. The act of dispensing a drug contrary to the provisions of this paragraph shall be deemed to be an act in violation of the rules and regulations of the Idaho State Board of Pharmacy and of the Pharmacy Act of the State of Idaho."

it would be impossible for Congress to determine beforehand those drugs to which it wishes a particular policy to be applied and to formulate specific rules for each situation." *Iske v. United States,* 396 F.2d 28 (10th Cir. 1968).

See also, *State ex. rel. Scott v. Conaty,* 155 W.Va. 718, 187 S.E.2d 119 (1972); *Mason v. State,* 12 Md.App. 655, 280 A.2d 753 (1971). With a single exception, every court which has passed upon the delegation question, across a wide range of drug-related statutes, has sustained the legislature's action. *National Nutritional Foods Ass'n v. Weinberger, supra*; *White v. United States,* 395 F.2d 5 (1st Cir. 1968); *Iske v. United States, supra*; *Scott v. Conaty, supra*; *Mason v. State, supra*; *State v. Hosick,* 12 N.C.App. 74, 182 S.E.2d 596 (1971); *Hohnke v. Commonwealth,* 451 S.W.2d 162 (Ky.1970); *State v. Davis,* 450 S.W.2d 168 (Mo.1970); *State v. Sargent,* 252 Or. 579, 449 P.2d 845 (1969). But see, *State v. Johnson,* 84 S.D. 556, 173 N.W.2d 894 (1970).

The state of the drug art is constantly undergoing change, revision and development. Thousands of potentially dangerous drugs exist, and it would be impossible for the legislature to consider each drug and evaluate the need for prescription status. Delegation of the drug-by-drug evaluation is a necessary and proper exercise of legislative authority.

■ Kellogg contends that the legislature did not adequately specify the criteria to be employed in determining whether a drug should require prescription. Defendant points for example to 21 U.S.C. § 353(b)(1), and contends that it is possible for the legislature to spell out which types of drug effects it considers to be harmful and necessitate regulation. That the legislature could have chosen a more specific route is irrelevant. The question is whether the delegation chosen was adequate.

In areas which require relatively free delegation, such as in the instant case, the United States Supreme Court has articulated the following standard:

"The judicial approval accorded these 'broad' standards for administrative ac-

tion is a reflection of the necessities of modern legislation dealing with complex economic and social problems. See *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 398, 60 S.Ct. 907, 914, 84 L.Ed. 1263. The legislative process would frequently bog down if Congress were constitutionally required to appraise beforehand the myriad situations to which it wishes a particular policy to be applied and to formulate specific rules for each situation. Necessity therefore fixes a point beyond which it is unreasonable and impracticable to compel Congress to prescribe detailed rules; it then becomes constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority. Private rights are protected by access to the courts to test the application of the policy in the light of these legislative declarations." *American Power & Light Co. v. Securities & Exchange Comm'n,* 329 U.S. 90, 67 S.Ct. 133, 91 L.Ed. 103 (1946).

The Idaho legislature has provided the requisite general policy in I.C. § 37–2201:

"37–2201. Declaration of policy.—The legislature of the state of Idaho hereby finds that it is essential to the public health and safety to regulate and control the manufacture, sale and distribution of drugs and medical supplies as defined in this act.

It is, therefore, hereby declared to be the policy and purpose of this act to vest in an administrative agency composed of specially trained, competent, and skilled persons the power and authority to administer and enforce the provisions of this act, to the end that the manufacture and distribution of drugs, medical supplies, and the compounding and dispensing of prescriptions may be properly regulated and supervised in the interest of public health and safety."

Legislative mandates that delegated authority be exercised "in the interest of public health and safety" are commonly considered adequate guidance from the legisla-

ture. Davis, Administrative Law Treatise, § 2.04 (1958). The legislature has delineated the agency chosen to effectuate the policy, the Board of Pharmacy, and has defined the limits of that Board's power in terms of determining the status of various drugs. We cannot say that this is an improper delegation of legislative authority. The district court order dismissing the information is thus reversed and the cause is remanded for further proceedings.

## CROSS–APPEAL ISSUES

On cross appeal, defendant raises two additional issues. He argues that the state failed to establish that prednisolone is a prescription drug, and that because he is a naturopathic physician, he is authorized to dispense prescription drugs. Both arguments are couched in terms of the state's failure to establish probable cause at preliminary hearing.

Initially, we would observe that no preliminary hearing was held in this matter. Instead, the parties waived preliminary hearing and stipulated generally to the evidence which would have been presented at preliminary hearing. Included in the stipulation was a transcript of another unrelated preliminary hearing in another criminal matter, with the agreement that the evidence would have been substantially identical. Presumably, the court was to decide whether there was probable cause based upon the stipulation.

Defendant first contends that the state failed to establish that prednisolone does require a prescription. In the stipulation entered into by both parties, it was agreed that the following drug reference works would be introduced: (1) 1975 U.S. Pharmicopeia and Supplement No. 1 thereto; (2) 1970 Pharmicopeia; (3) 1969 Physicians Desk Reference; (4) U.S. Drug Directory Redbook; (5) National Drug Code; and (6) Manufacturer's instructions for prednisolone. Several of these works denominate prednisolone as a prescription drug,[3] and for the purposes of preliminary hearing this is adequate to establish probable cause. Presumably, at trial the state will establish official proof of the drug's status.[4]

Defendant next argues that he is a naturopathic physician and that he is therefore entitled to dispense prescription drugs. I.C.

---

**3.** The National Drug Code and the Manufacturer's Instructions both designate prednisolone as a prescription drug. The Court was unable to locate a copy of the 1969 Physicians Desk Court Reference, as physicians and hospitals consider that issue to be out of date. However, the 1972 Physicians Desk Reference also lists prednisolone as a prescription drug.

Defendant argues that the state has not demonstrated that prednisolone meets the federal criteria for prescription drugs. 21 U.S.C. § 353(b)(1) provides that prescription status shall attach whenever a drug is not safe for use except under physician supervision because of potential harmful effects. Suffice it to say that the Manufacturer's Instructions, stipulated into evidence, lists the following adverse reactions: "Fluid and Electrolyte Disturbances: Sodium retention. Fluid retention. Congestive heart failure in susceptible patients. Potassium loss. Hypokalemic alkalosis. Hypertension. Musculaskeletal: Muscle weakness. Steroid myopathy. Loss of muscle mass. Osteoporosis. Vertebral compression fractures. Aseptic necrosis of femoral and humeral heads. Pathologic fracture of long bones. Gastrointestinal: Peptic ulcer with possible perforation and hemorrhage. Pancreatitis. Abdominal distention. Ulcerative esophagitis. Dermatologic: Impaired wound healing. Thin fragile skin. Petechiae and ecchymoses. Facial erythema. Increased sweating. May suppress reactions to skin tests. Neurological: Convulsions. Increased intracranial pressure with papilledema (pseudotumor cerebri) usually after treatment. Vertigo. Headache. Endocrine: Menstrual irregularities. Development of Cushingoid state. Suppression of growth in children. Secondary adrenocortical and pituitary unresponsiveness, particularly in times of stress, as in trauma, surgery or illness. Decreased carbohydrate tolerance. Manifestations of latent diabetes mellitus. Increased requirements for insulin or oral hypoglycemic agents in diabetics. Opthalmic: Posterior subcapsular cataracts. Increased intraocular pressure. Glaucoma. Exophalmos. Metabolic: Negative nitrogen balance due to protein catabolism.

**4.** There is apparently no comprehensive list in existence which contains a complete rendition of federally designated prescription drugs. Instead, new drug application orders are kept on file at the Food and Drug Administration in Washington, D.C., and to establish conclusively that a drug has officially been designated a prescription drug, the state must obtain a certified copy of the relevant new drug application order for prednisolone.

§ 37–2210 mandates that no person except a physician, dentist, podiatrist, osteopath, pharmacist, registered nurse, wholesaler or manufacturer may dispense prescription drugs. Kellogg contends that naturopathic physicians are thereby also excepted. In excepting physicians, we conclude that the legislature intended only to mean those persons licensed to practice medicine in the State pursuant to I.C. § 54–1803. There is no indication in the record that Kellogg is so licensed, and his claimed status as a naturopath does not automatically render him a "physician." [5] See, *State v. Maxfield*, 98 Idaho 356, 564 P.2d 968 (1977).

We note that in the stipulation it was agreed that

"the state would then introduce duly authenticated Affidavits of the Executive Secretary, State Board of Nursing; Bureau Chief, Bureau of Occupational Licenses, Department of Government Agencies; Executive Secretary, State Board of Pharmacy; Executive Secretary, State Board of Dentistry; Executive Secretary, State Board of Medicine; stating that after due and diligent search of the records of said boards and agencies, that said Affiants found no records indicating that Roscoe A. Kellogg was licensed or admitted to practice any of said professions or occupations listed in Idaho Code 37–2210."

Given this state of the record, the state adequately established probable cause that Kellogg was not authorized to dispense prescription drugs.

The cause is reversed and remanded.

DONALDSON, SHEPARD and BISTLINE, JJ., concur.

BAKES, Justice, dissenting:

I cannot agree with the majority's conclusion that I.C. § 37–2210 does not unconstitutionally delegate legislative authority to the State Board of Pharmacy and to the federal government, particularly in the criminal context.

The starting point in any analysis of this problem must be the doctrine of separation of powers embodied in Art. 2, § 1, of the Idaho Constitution, and the exclusive grant of legislative authority to the senate and house of representatives of Idaho and to the people of Idaho acting by referendum or initiative set forth in Art. 3, § 1. These sections have been interpreted to prohibit the legislature from delegating its legislative or policymaking function to an administrative agency, but they have been construed to allow the legislature to delegate to an agency the factfinding task of determining whether the proper conditions exist for implementation of legislative policy where that policy is set out in the act, and where the criteria and standards under which the administrative agency is to act are clearly spelled out in the law. *Board of County Commissioners of Twin Falls County v. Idaho Health Facilities Authority*, 96 Idaho 498, 531 P.2d 588 (1975); *Boise Redevelopment Agency v. Yick Kong Corp.*, 94 Idaho 876, 499 P.2d 575 (1972).

Although I will concede that the line between legislating or making policy on the one hand, and finding facts or ascertaining whether the policy should be implemented on the other, is by no means clear cut, in this case I believe that the duties given to the board under I.C. § 37–2210 clearly go beyond the constitutionally permissible authority to find facts and implement legislative policy and have become instead the setting of legislative policy by the board. That is because neither I.C. § 37–2210 nor any other section in the same chapter and title, gives the board any guidance or standards for determining which drugs shall be prescription drugs and which drugs shall not.

The statutory scheme in chapter 22 of Title 37 has no requirement that drugs designated prescription drugs by the board have any potential for abuse, that they be

**5.** Assuming, arguendo, that Kellogg's status as a naturopath is relevant, we note that the stipulation does not establish that he is a naturopath. The only relevant portion of the stipula-

tion states that there is a sign in front of his office indicating that he is a naturopathic physician. It was not stipulated, however, that he is in fact a naturopath.

habit forming or addictive, that they have narcotic, stimulant, depressant, or hallucinogenic effects, that they present any danger or potential danger to their users, or that it be in the public interest that these drugs not be available without prescription. Thus, the State Board of Pharmacy is under no statutory constraint to find that a drug must fall within certain criteria or standards before it may declare it to be a prescription drug.[1] In other words, because it has no statutory guidance, the board is making a legislative judgment every time it classifies a drug as a prescription drug rather than a finding of fact that the drug should be classified as a prescription drug because it has certain characteristics and meets certain criteria set out by the legislature. Furthermore, when the board adopted a regulation making all federal prescription drugs, *ipso facto,* Idaho prescription drugs, the legislative authority has been twice delegated—first to the board and then by the board to the federal government, with no guidance by the legislature. The particular drug, prednisolone, in question here, which the defendant Kellogg has allegedly dispensed, had apparently never been declared a prescription drug itself by the Idaho Pharmacy Board, except by the fact that the Idaho Pharmacy Board had adopted a regulation purporting to make all federal "legend drugs" prescription drugs under Idaho law. Thus, not only has the

Idaho legislature invalidly delegated its legislative authority to the pharmacy board by I.C. § 37–2210, the pharmacy board has in turn invalidly redelegated that authority to the federal government.[2] Therefore, any prosecution under I.C. § 37–2210 must fail.

The cases cited by the majority, *ante,* at 517, actually support this view. With the exception of *National Nutritional Foods Ass'n v. Weinberger,* 512 F.2d 688 (2d Cir.), *cert denied,* 423 U.S. 827, 96 S.Ct. 44, 46 L.Ed.2d 44 (1975), which is a procedural case dealing mainly with the conduct of administrative hearings to determine whether large doses of vitamins A and D would be subject to FDA regulation as drugs, all of the federal decisions cited on that page concerned construction of federal statutes which only allowed an administrative agency to classify a substance as a drug by regulation under the statute after a finding that the substance involved met the statutory criteria of potential for abuse because of the drug's depressant, stimulant or hallucinogenic effects, or similar criteria. All but one of the state cases cited on that page also involved statutes in which a state board's authority to determine a drug to be a prescription drug or a controlled substance was similarly restricted by statute to the authority to classify a drug only after a finding by the board of its potential for abuse or its narcotic, depressant, stimulant

1. As a result, the State Board's determination of prescription drugs could include such items as aspirin, vitamins, tobacco, liquor or any other product commonly sold in retail establishments.

2. The legislature is free to adopt by reference the drug laws of the United States at the time that I.C. § 37–2210 was enacted, but it may not delegate its legislative authority to the government of the United States in the future. For that reason, a prospective adoption of the drug laws of the United States is also an unconstitutional delegation of the legislative authority no different from I.C. § 37–2210's direction to the board to determine which drugs shall be prescription drugs and which drugs shall not. Thus, my statements in the text concerning delegation of legislative authority to the board are also applicable to delegation of legislative authority to the federal government.

The constitutional prohibition against adopting federal law *in futuro* has been recognized by the Idaho legislature in other contexts. Thus, I.C. § 63–3024 imposes a tax upon the "taxable income" of every resident individual, trust or estate. "Taxable income" is defined in I.C. § 63–3022 the same as it is in Section 63 of the "Internal Revenue Code." Internal Revenue Code is defined in I.C. § 63–3004 as "the Internal Revenue Code of 1954 of the United States, as amended, and in effect on the 1st day of January, 1977." 1977 I.S.L., ch. 1. The legislative history to I.C. § 63–3004 shows that each year the legislature amends that section to change the reference to the Internal Revenue Code to January 1, of the current year—which seems to me a recognition by the legislature that it could not constitutionally pass a statute which would adopt by reference federal law *in futuro.* If the legislature cannot do so it seems even more clear that the Pharmacy Board cannot.

or hallucinatory potential, or that it fell within similarly worded standards. Thus, the South Dakota case of *State v. Johnson*, 84 S.D. 556, 173 N.W.2d 894 (1970), is not the anomaly the majority would have us believe. Instead, because that case, like this case, deals with a statute in which a board was given unbridled discretion to classify drugs or in which the legislature directed the board to adopt *future* as well as present federal classifications with no standards for approving or disapproving of the federal classifications, *Johnson* simply presents the proper rule to be followed in the situation in which the statutes have not adequately channeled the board's authority and discretion to classify substances as drugs subject to regulation under the statute. After studying these cases I conclude that this case is like *Johnson* and unlike the others cited by the majority. Accordingly, I would hold that the defendant Kellogg cannot be prosecuted under I.C. § 37–2210 for selling, dispensing or otherwise disposing of drugs without a prescription because the drug has not been identified as a prescription drug pursuant to a valid statute of this state.

Finally, it is worth noting that it is not beyond the legislature's capacity to draft a statute which would properly delegate the administrative function of classifying substances as prescription drugs to the State Board of Pharmacy under adequate statutory criteria and guidelines which provide adequate standards from which the board may classify substances as controlled substances. I.C. §§ 37–2704, –06, –08, –10 and –12 contain acceptable standards for classification of Schedule I, II, III, IV, and V drugs which

the State Board of Pharmacy must use in carrying on its factfinding function of the classification of newly discovered or identified substances.[3] When the board acts under these sections, it is not performing a legislative function, but an administrative one. Similarly, I.C. § 37–2702(d) provides a procedure and standards whereby the board will consider changes in federal classifications and itself decide whether it will follow or reject changes in the federal classifications. Under that act the board is following legislative guidelines and not making the legislative or policy judgment itself, nor blindly deferring to the federal classification. But until such time as the board's authority under I.C. § 37–2210 is similarly constrained, I cannot agree that prosecution under I.C. § 37–2210 for dispensing a drug required to be sold under prescription by rule or regulation of the board or law of the United States enacted after the adoption of I.C. § 37–2210 is permissible under Art. 2, § 1, and Art. 3, § 1, of the Constitution of Idaho. Accordingly, I would affirm the decision of the district court.

---

**3.** For example, I.C. § 37–2704 provides that a substance shall be placed on Schedule I if the board finds that the substance:

"(a) Has high potential for abuse; and

"(b) Has no accepted medical use in treatment in the United States or lacks accepted safety for use in treatment under medical supervision."

I.C. § 37–2706 provides that a substance shall be placed on Schedule II if the board finds that:

"(a) The substance has high potential for abuse.

"(b) The substance has currently accepted medical use in treatment in the United States, or currently accepted medical use with severe restrictions; and

"(c) The abuse of the substance may lead to severe psychic or physical dependence."

I.C. §§ 37–2708, –10 and –12 define Schedule III, IV and V substances in terms of comparable precision. These standards, together with the availability for comparison of substances assigned by the legislature to the various schedules, I.C. §§ 37–2703, –05, –07, –09 and –11, provide the necessary legislative guidelines that must be given to administrative boards to prevent legislative authority from being delegated to them.