MOELLER, J. Specially concurring in part and dissenting in part.
I write briefly to note my concurrence with the majority in its decision that Idaho Code section 34-1809(4) is unconstitutional because it improperly attempts to confer original jurisdiction in this Court. I also concur on the majority's ruling on attorney fees. However, I join with Justice Brody in dissenting from the portion of the decision wherein the majority elects to exercise this Court's original jurisdiction pursuant to Article V, section 9 of the Idaho Constitution and rule upon the merits of the case. Although I fully concur with Justice Brody's analysis, I write separately to point out my additional concerns on the issues of jurisdiction and justiciability.
I. JURISDICTION
Simply put, I do not believe that Regan's petition presents an urgent constitutional issue sufficient to overcome its jurisdictional deficiencies-many of which are noted in the majority's decision. In Sweeney v. Otter , 119 Idaho 135, 804 P.2d 308 (1990), this Court decided a case without clear jurisdiction to do so. However, it ruled upon the merits "[b]ecause the petition allege[d] sufficient facts concerning a possible constitutional violation of an urgent nature ...."
*32 Id . at 138, 804 P.2d at 311 (emphasis added). In that case, the Supreme Court was confronted with an actual and urgent constitutional crisis. The Idaho senate was deadlocked at 21 Democrats and 21 Republicans following the 1990 general election. Before taking office, leadership elections were held. When the vote for president pro tempore of the senate ended in a tie, it was broken by the newly elected lieutenant governor. An issue arose as to whether the Idaho Constitution prohibited the lieutenant governor from voting on organizational matters of the senate. This was the first time in Idaho's history that the senate had been equally divided between two political parties. Thus, the Sweeney court was confronted with a unique and urgent constitutional issue of first impression that would paralyze the legislature until it was resolved.[2]
This case is distinguishable from Sweeney . Notwithstanding the majority's belief that there is an urgency to this matter based on the nature of the constitutional challenge, any urgency or uncertainty in this case is mainly the result of Regan's own actions in filing his petition. For example, the majority correctly recognizes that other provisions of Idaho's Medicaid law contain references to federal law similar to the portions of Idaho Code section 56-267 that are contested in this case; yet Regan has not challenged these provisions. See, e.g. , I.C. § 56-254. There are comparable provisions in other Idaho statutes that reference a federal law that have existed on the books for years. The constitutionality of such statutory language has previously been challenged in the district courts of the state without the necessity of the Supreme Court invoking its original jurisdiction. See, e.g. , Idaho Sav. & Loan Ass'n v. Roden , 82 Idaho 128, 350 P.2d 225 (1960) ; State v. Kellogg , 98 Idaho 541, 568 P.2d 514 (1977). There is simply no urgent constitutional crisis here-as there was in Sweeney -except one of Regan's own making. In other words, I believe that if this matter were properly dismissed, the legislature would be free to immediately act on section 56-267 and address the concerns it was intended to resolve. Under these circumstances, principles of judicial restraint compel me to dissent from the majority's decision to take up the merits of this case.
II. JUSTICIABILITY
In addition, Regan's petition suffers from serious justiciability defects. The law in Idaho is clear that "[a] prerequisite to a declaratory judgment action is an actual or justiciable controversy. Justiciability is generally divided into subcategories-advisory opinions, feigned and collusive cases, standing, ripeness, mootness, political questions, and administrative questions." Miles v. Idaho Power Co ., 116 Idaho 635, 639, 778 P.2d 757, 761 (1989) (internal citation omitted). This case presents a variety of troublesome justiciability questions, the most serious of which appears to be the political question doctrine.
What this case actually presents to the Court is not an urgent constitutional issue, but a political question. This became readily apparent at oral argument, when counsel for Regan, in urging the Court to strike down the new law, argued that what the Supreme Court is really being asked to do is to decide whether this state will "act or be acted upon" when it comes to its relationship with the federal government. Counsel began his presentation with this phrase, and later repeated it when asked by the Chief Justice whether the state could simply "opt out" of Medicaid expansion if the federal government changed the current standards. Such arguments are largely ideological and dogmatic in nature-not legal-and demonstrate that the intent behind the petition is to have this Court redefine the proper role of federalism in Idaho. In sum, this Court is not really being asked to address an urgent constitutional issue created by the passage of section 56-267 ; rather, Regan is asking this Court to *33 take sides in an ideological debate concerning political philosophy.
This Court is not the proper forum for such a debate-this is a choice for the people and their elected representatives in the legislature. The question this Court is being asked to answer goes far beyond the actual language in section 56-267. To the extent that this Court has essentially been invited to decide the appropriate level of state and federal cooperation in Medicaid expansion, this issue concerns "an initial policy determination of a kind clearly for nonjudicial discretion." Id . at 640, 778 P.2d at 762 (quoting Baker v. Carr , 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) ).
For these same reasons, it appears that this matter was brought prematurely. Notwithstanding the adoption of section 56-267 by the people, pursuant to the power they reserved to themselves in Article III, section 1 of the Idaho Constitution, this matter is not yet ripe for adjudication. It is currently unclear what the legislature will do with the funding and implementation of section 56-267.[3] In short, we do not know what Medicaid expansion in Idaho will even look like yet. The concerns raised by Regan may need to be answered by this Court someday, but this is not that day. Such important constitutional questions should not be answered in a vacuum. It is this Court's proper role to resolve only actual cases and controversies-not hypothetical ones.
III. CONCLUSION
The people have spoken by passing Proposition Two; now it is in the hands of the legislature. Therefore, under our constitutional form of government, it is up to the legislative branch to act next-not the judicial branch. Principles of judicial restraint and separation of powers should constrain us from taking sides in this debate until such time as an urgent constitutional issue or justiciable controversy actually arises. Therefore, I respectfully dissent from the majority's decision to address the merits of this case and would dismiss the petition on procedural grounds.

Interestingly, just three years later, the Court appeared to lower the Sweeney standard by ignoring the urgency requirement: "We will accept jurisdiction to review a petition for extraordinary relief where the petition alleges sufficient facts concerning possible constitutional violations ." Nez Perce Tribe v. Cenarrusa , 125 Idaho 37, 38, 867 P.2d 911, 912 (1993) (emphasis added). However, in more recent years the urgency requirement was apparently resuscitated. See, e.g. , Coeur D'Alene Tribe v. Denney , 161 Idaho 508, 513, 387 P.3d 761, 766 (2015) ; Idaho Watersheds Project v. State Bd. of Land Commissioners , 133 Idaho 55, 57, 982 P.2d 358, 360 (1999).

For example, although voters in the State of Utah recently passed a similar Medicaid expansion initiative, its legislature is currently debating whether to limit the expansion.