499 P.2d 575

**BOISE REDEVELOPMENT AGENCY,**
Plaintiff-Respondent and
Cross-Appellant,

v.

**YICK KONG CORPORATION, a Washington corporation, et al., Defendants-Appellants and Cross-Respondents.**

No. 11010.

Supreme Court of Idaho.

June 2, 1972.

Eli A. Weston, Boise, for appellants-cross-respondents.

Hawley, Troxell, Ennis & Hawley, Boise, for respondent-cross-appellant.

C. Timothy Hopkins, of Hansen & Hopkins, Idaho Falls, amicus curiae.

SHEPARD, Justice.

This appeal presents for decision the constitutionality of the Idaho Urban Renewal Law of 1965. Although this case originated as one in condemnation wherein plaintiff sought to acquire real property of the defendants, the sole question presented herein relates to defendants-appellants' numerous and various contentions regarding the constitutionality of the legislative act in question. It should be noted initially that defendants-appellants, assuming the statute is constitutional, raise no question pertaining to the public use for which the property is being taken, the necessity of the property being taken for the completion of the project, nor the amount of money awarded defendant for the property. The issues herein relate solely to the constitutionality of the statutes in question, the validity of the agency sought to be created by the statute and the ability of the agency to so operate under the authority granted it by the statute.

The Idaho Urban Renewal Law (Idaho Session Laws of 1965, Chapter 246) is codified as I.C. § 50–2001, et seq. Therein the legislature found and declared:

"* * * that there exist in municipalities of the state deteriorated and deteriorating areas (as herein defined) which constitute a serious and growing menace, injurious to the public health, safety, morals and welfare of the residents of the state; that the existence of such areas contributes substantially and increasingly to the spread of disease and crime, constitutes an economic and social liability imposing onerous municipal burdens which decrease the tax base and reduce tax revenues, substantially impairs or arrests the sound growth of municipalities, retards the provision of housing

accommodations, aggravates traffic problems and substantially impairs or arrests the elimination of traffic hazards and the improvement of traffic facilities; and that the prevention and elimination of these conditions is a matter of state policy and state concern in order that the state and its municipalities shall not continue to be endangered by areas which are focal centers of disease, promote juvenile delinquency, and consume an excessive proportion of its revenue because of the extra services required for police, fire, accident, hospitalization and other forms of public protection, services and facilities.

.    .    .    .    .    .

"It is further found and declared that the powers conferred by this act are for public uses and purposes for which public money may be expended as herein provided and the power of eminent domain and police power exercised; and that the necessity in the public interest for the provisions herein enacted is hereby declared as a matter of legislative determination." I.C. § 50-2002 [Chap. 246, § 2, S.L. 1965]

I.C. § 50-2005 provides:

"No urban renewal agency and no municipality shall exercise the authority hereafter conferred by this act until after the local governing body shall have adopted a resolution finding that: (1) one or more deteriorated or deteriorating areas as defined in this act exist in such municipality; (2) the rehabilitation, conservation, redevelopment, or a combination thereof, if such area or areas is necessary in the interest of the public health, safety, morals or welfare of the residents of such municipality; and (3) there is need for an urban renewal agency to function in the municipality."

I.C. § 50-2006 provides for the establishment in each municipality of an "Urban Renewal Agency," which under the provisions of I.C. § 50-2005 cannot exercise any powers until the proper findings have been made by the local governing body.

Pursuant to I.C. § 50-2005 the Boise City Council made the requisite findings of "deteriorated and deteriorating areas" within the City of Boise. On March 22, 1971 the Boise City Council adopted an amended Urban Renewal plan covering a certain area in downtown Boise. Defendants do not challenge the procedures carried out by the Boise City Council as conforming to the requisite procedures specified in the statute. Within the area contained in the amended urban renewal plan is located the real property and the building situated thereon owned by the defendants and the subject of this action.

Negotiations between plaintiff and defendants for the purchase of the property were unsuccessful and plaintiff filed an action in condemnation to acquire the property of the defendants. The trial court gave judgment of condemnation in favor of the plaintiff but found one clause of the Idaho Urban Renewal Act of 1965 to be unconstitutional. Defendants appeal from the judgment of condemnation and plaintiff has cross-appealed from the finding of the trial court of partial unconstitutionality of the Idaho Urban Renewal Act of 1965.

▮ Defendants-appellants first contend that the trial court erred in holding that defendants' property was being taken for a public use and assert that such taking is prohibited by Article I, Sections 13 and 14 of the Idaho Constitution and the Fourteenth Amendment to the Constitution of the United States. Article I, Section 13 of the Constitution of the State of Idaho and the Fourteenth Amendment to the Constitution of the United States provide that no person shall be deprived of property without due process of law. Article I, Section 14 of the Constitution of the State of Idaho provides:

"The necessary use of lands for [irrigation and mining usages, discussed *infra*], or any other use necessary to the complete development of the material resources of the state, or the preservation of the health of its inhabitants, is hereby declared to be a public use, and subject

to the regulation and control of the state.

"Private property may be taken for public use, but not until a just compensation, to be ascertained in the manner prescribed by law, shall be paid therefor."

Other constitutional and statutory provisions of significance are:

Article 11, § 8 states:

"The right of eminent domain shall never be abridged, nor so construed as to prevent the legislature from taking the property and franchises of incorporated companies, and subjecting them to public use, the same as the property of individuals * * *."

I.C. § 7–701 states:

"Subject to the provisions of this chapter, the right of eminent domain may be exercised in behalf of the following public uses:

"1. Public buildings and grounds for the use of the state, and all other public uses authorized by the legislature.

"2. Public buildings and grounds for the use of any county, incorporated city, village, town * * * and all other public uses for the benefit of the state or of any county, incorporated city, village or town or the inhabitants thereof."

Defendants assert that because of the proposed methodology for the development of the area in question under the amended urban renewal plan, the use is not "public" as required by the various constitutional and statutory strictures of Idaho. Plaintiff's proposal, as set forth in the plan, is to clear the area and thereafter permit private enterprise, on a bid basis, to construct and occupy certain of the buildings planned for the area. Some of the proposed buildings for the area may be used by the City of Boise or by the County of Ada, but the majority will be constructed and occupied by private commercial enterprises. The defendants contend that these private commercial enterprises will "benefit" by the plan and that therefore condemnation is not allowed by the constitutional and statutory strictures.

Defendants base their arguments upon three cases which so held and which rejected similar plans in other states, to-wit: Florida, Georgia and South Carolina. Adams v. Housing Authority of City of Daytona Beach, 60 So.2d 663 (Fla.1952); Housing Authority of City of Atlanta v. Johnson, 209 Ga. 560, 74 S.E.2d 891 (Ga. 1953); Edens v. City of Columbia, 228 S. C. 563, 91 S.E.2d 280 (1956). Respondent, on the other hand, indicates that more than thirty other states have in similar situations and under similar plans accepted the "public use" as being legitimately served by the clearance of blighted and/or deteriorated areas. The fact that private interests may incidentally benefit has not been held to prevent the application of the "public use" doctrine as sought by respondent herein. See: Annotation, Urban Redevelopment Laws, 44 A.L.R.2d 1414, and later case service; Berman v. Parker, 348 U.S. 26, 33, 75 S.Ct. 98, 103, 99 L.Ed. 27 (1954), in which it is stated:

"Once the object is within the authority of Congress, the means by which it will be attained is also for Congress to determine. Here one of the means chosen is the use of private enterprise for redevelopment of the area."

See also: Rabinoff v. District Court, 145 Colo. 225, 360 P.2d 114 (1961); Redevelopment Agency of San Francisco v. Hayes, 122 Cal.App.2d 777, 266 P.2d 105 (Cal. App.1954), cert. den. sub nom. Van Hoff v. Redevelopment Agency of San Francisco, 348 U.S. 897, 75 S.Ct. 214, 99 L.Ed. 705 (1954); Foeller v. Housing Authority of Portland, 198 Or. 205, 256 P.2d 752 (1953).

■■ The state, both through the power of eminent domain and the police powers, may legitimately protect the public from disease, crime, and perhaps even deterioration, blight and ugliness. See: Berman v. Parker, supra. Unless defendants herein have shown that the purpose of the urban renewal plan fails to meet the

objectives set forth in I.C. § 50–2002 and is instead designed to predominately benefit private interests, their argument must fail. Mere incidental benefit to private interests will not invalidate such an urban renewal plan. Nelson v. Marshall et al., 94 Idaho 726, 497 P.2d 47 (1972); Miller v. City of Tacoma, 61 Wash.2d 374, 378 P.2d 464 (1963); S. D. Realty Co. v. Sewerage Com. of City of Milwaukee, 15 Wis.2d 15, 112 N.W.2d 177 (1961).

We note that the Constitution of the State of Idaho, Article I, Section 13, *supra*, grants a right of eminent domain much broader than grants in most other state constitutions. For example, completely private interests in the irrigation and mining businesses can utilize eminent domain. As was said in McKenney v. Anselmo, 91 Idaho 118, 123, 416 P.2d 509, 514 (1966):

"The timber of this state is a material resource and where that resource cannot be completely developed without the exercise of the power of eminent domain that power may be lawfully exercised. The fact that the use may be for private benefit is immaterial since the controlling question is whether the use is for the complete development of the material resources of the state."

In Bassett v. Swenson, 51 Idaho 256, 263, 5 P.2d 722, 725 (1931):

"The courts of this state have repeatedly held the right is granted to private enterprises in uses necessary to the complete development of the state. In behalf of a private lumber company, * * *. In behalf of a power company not a public utility, * * *. In behalf of a private mining company, * * *." (Citations omitted)

In the case at bar it is clear that public benefit is intended and is served by the legislation herein attacked by appellants. It is clear that the purposes set forth in I. C. § 50–2002, *supra,* will be accomplished in part by the upgrading of deteriorated and deteriorating areas. It appears that the only means by which such a public benefit can be effectively achieved is through

the involvement of the private commercial interests. On the other hand there is no showing that any particular private interests will be discriminated for or against in the letting of bids for redevelopment, or that any favored status will be granted.

We therefore conclude that the power of eminent domain attempted to be utilized herein is for a "public use" as is required by our Constitution. As herein stated, such has been the nearly universal consensus of the courts which have passed on the same question. 44 A.L.R.2d 1414.

■ Appellants asserted in the lower court that the plaintiff herein was merely the alter ego of the City of Boise, or, at the least, a subdivision of the State of Idaho. Appellants contend that, since plaintiff falls into one of the two above categories, its authorized activities, insofar as the issuance of revenue bonds without the consent of the electorate is concerned, violate Article 8, Section 3 of the Idaho Constitution. The lower court found contrary to those assertions and we agree with the finding of the lower court. The pertinent constitutional provisions relative to the assertions of the appellants are as follows:

"Limitations on county and municipal indebtedness.—No county, city, town, township, board of education, or school district, or other subdivision of the state, shall incur any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof voting at an election to be held for that purpose, no [nor] unless, before or at the time of incurring such indebtedness, provisions shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within thirty years from the time of contracting the same. Any indebtedness or liability incurred contrary to this provision shall be void: provided, that this section shall

not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state and provided further that any city or village may own, purchase, construct, extend, equip, within and without the corporate limits of such city or village, water systems and sewage collection systems, and water treatment plants and sewage treatment plants, and off street parking facilities, public recreation facilities, and air navigation facilities, and, for the purpose of paying the cost thereof may, without regard to any limitation herein imposed, with the assent of two-thirds of the qualified electors voting at an election to be held for that purpose, issue revenue bonds therefor, the principal and interest of which to be paid solely from revenue derived from rates and charges for the use of, and the service rendered by, such systems, plants, and facilities as may be prescribed by law; and provided further that any port district, for the purpose of carrying into effect all or any of the powers now or hereafter granted to port districts by the laws of this state, may contract indebtedness and issue revenue bonds evidencing such indebtedness, without the necessity of the voters of the port district authorizing the same, such revenue bonds to be payable solely from all or such part of the revenues of the port district deprived from any source whatsoever excepting only those revenues derived from ad valorem taxes, as the port commission thereof may determine, and such revenue bonds not to be in any manner or to any extent a general obligation of the port district issuing the same, nor a charge upon the ad valorem tax revenue of such port district." Art. 8 § 3, Constitution of Idaho.

"County, etc., not to loan or give its credit.—No county, city, town, township, board of education, or school district, or other subdivision, shall lend, or pledge the credit or faith thereof directly or indirectly, in any manner, to, or in aid of any individual, association or corporation, for any amount or for any purpose whatever, or become responsible for any debt, contract or liability of any individual, association or corporation in or out of this state." Art. 8, § 4, Constitution of Idaho.

"Municipal corporations not to loan credit.—No county, town, city, or other municipal corporation, by vote of its citizens or otherwise, shall ever become a stockholder in any joint stock company, corporation or association whatever, or raise money for, or make donation or loan its credit to, or in aid of, any such company or association: provided, that cities and towns may contract indebtedness for school, water, sanitary and illuminating purposes: provided, that any city or town contracting such indebtedness shall own its just proportion of the property thus created and receive from any income arising therefrom, its proportion to the whole amount so invested." Art. 12, § 4, Constitution of Idaho.

We deal first with the contention that the plaintiff is the alter ego of the City of Boise. Defendants point to the necessity for a finding of deteriorated areas by the City prior to the plaintiff being able to exercise any of the authority prescribed by the Legislature. Defendants also point to the appointment of the commissioners of the plaintiff by the Mayor and council of the City of Boise and to the ability of the Mayor and local governing body to remove a commissioner of the plaintiff from office.

We note, however, that plaintiff is an entity of legislative creation and it is the legislature that established its powers, duties and authorities. The legislature, in what we may assume to be an effort to maintain some local voice in the question of whether a particular municipality had a need for urban renewal, required a finding of need by a municipality prior to the time an urban renewal agency could come into existence. While the particular city may trigger the existence of the plaintiff, it cannot control its powers or operations.

Again, while the legislature may have sought to allow a local voice in the selection of the commissioners of the plaintiff, there is no attack upon the integrity or independence of the commissioners of the plaintiff and we cannot say that such appointment procedures cause inherent control in the City. Neither does the provision for removal of commissioners necessarily show any such control by the City. The removal procedures are not arbitrary, nor are they solely in the discretion of the City. Removal can result only after hearing and consistent with the exact standards set forth in I.C. § 50–2006(d).[1]

We conclude that the statutory provisions allowing a local voice in the creation of the plaintiff do not result in a finding that plaintiff is simply the alter ego of the City of Boise. The degree of control exercised by the City of Boise does not usurp the powers and duties of the plaintiff, and the close association between the two entities at most shows two independent public entities closely cooperating for valid public purposes. In Wood v. Boise Junior College Dormitory Housing Commission, 81 Idaho 379, 342 P.2d 700 (1959), the contention was made that the Commission was merely an alter ego of the Boise Junior College District and as such was forbidden by the provisions of Article 8, Section 3, to issue bonds. The court therein stated:

> "Some of the control cited is that the housing commission cannot act until the trustees declare there is a need for housing; that employees of the commission may be employees of the district; that the housing commissioners may be removed on complaint of the junior college district trustees; * * * that the housing commissioners confer and cooperate with the college district trustees * * *.
>
> "In enacting legislation permitting the creation of the housing commissions,

clearly the Legislature intended a high degree of cooperation to exist between the junior college districts and the housing commissions for the purpose of providing students of the district with satisfactory housing. Their activities and control must be inter-related to the extent that satisfactory housing be provided to those students wishing to take advantage of the educational facilities of the junior college district.

> "The degree of control exercised does not usurp the powers and duties of the housing commissioners. The housing commission is a separate entity from the Boise Junior College District, created pursuant to statutes of this State, and does not impose an obligation upon the taxpayers of the junior college district. "* * * The close association at most shows two independent public boards closely cooperating for the purpose of furnishing facilities in furtherance of education." 81 Idaho at 383, 342 P.2d at 702.

It is apparent that this case is distinguishable from the case of O'Bryant v. City of Idaho Falls, 78 Idaho 313, 303 P.2d 672 (1956). Therein the court held that an ordinance of the City of Idaho Falls creating a cooperative with the power to issue bonds was unconstitutional because that cooperative was merely an alter ego of the City of Idaho Falls. The facts on that record showed that the cooperative was merely an attempt by the City to do indirectly that which it could not do directly. Herein such facts do not exist.

■ We further hold that the plaintiff is not a subdivision of the state within the meaning of Sections 3 or 4 of Article 8 of the Idaho Constitution. As pointed out in Lloyd v. Twin Falls Housing Authority, 62 Idaho 592, 113 P.2d 1102 (1941), the questioned authority has no powers of taxation and therefore the provisions of Article 8,

---

1. (d) For inefficiency or neglect of duty or misconduct in office, a commissioner may be removed only after a hearing and after he shall have been given a copy of

the charges at least 10 days prior to such hearings and have had an opportunity to be heard in person or by counsel.

Section 3 do not apply. Herein plaintiff has no ability to actually encumber any of the resources of the City of Boise and cannot spend beyond its own funds and property holdings.

■ Appellants next contend that Section 4 of Article 8 of the Idaho Constitution has been violated in that the City of Boise lent its credit to the plaintiff, and further that Section 4 of Article 12 of the Idaho Constitution was violated in that the City of Boise has made donations to and loaned its credit to or in aid of the plaintiff herein. The District Court held that, to the extent such was done without consideration, the above constitutional provisions were violated and the portions of I.C. § 50–2015 authorizing such contributions without consideration were void.

I.C. § 50–2015, "Cooperation by public bodies," provides in pertinent part:

"(a) For the purpose of aiding in the planning, undertaking or carrying out of an urban renewal project and related activities authorized by this act, any public body may, upon such terms, with or without consideration, as it may determine: (1) dedicate, sell, convey or lease any of its interest in any property or grant easements, licenses or other rights or privileges therein to an urban renewal agency; (2) incur the entire expense of any public improvements made by such public body in exercising the powers granted in this section; * * * (4) grant or contribute funds to an urban renewal agency and borrow money and apply for and accept advances, loans, grants, contributions, and any other form of financial assistance from the federal government, the state, county or other public body, or from any other source; (5) enter into agreements (which may extend over any period, notwithstanding any provision or rule of law to the contrary) with the federal government, an urban renewal agency or other public body respecting action * * * including the furnishing of funds or other assistance * * *; (6) [pave, dedicate

etc. roads and sidewalks, parks and similar edifices].

\* \* \* \* \* \*

"(c) * * *: Provided, that nothing contained in this section shall be construed as authorizing a municipality to give credit or make loans to an urban renewal agency.

"(d) * * *:

"(4) assume the responsibility to bear any loss that may arise as the result of the exercise of authority by the urban renewal agency under subsection (d) of section 50–2007 in the event that the real property is not made a part of the urban renewal project.

"(e) For the purposes of this section, or for the purpose of aiding in the planning, undertaking or carrying out of an urban renewal project and related activities of a municipality, such municipality may issue and sell its general obligation bonds. Any bonds issued by a municipality pursuant to this section shall be issued in the manner and within the limitations prescribed by the applicable laws of this state for the issuance and authorization of general obligation bonds by such municipality."

It is at least arguable that the above provisions do indeed constitute a "donation or loan [of] credit" and that the City of Boise is "raising money for" the plaintiff.

However, as we stated in Hansen v. Kootenai County Board of County Commissioners, 93 Idaho 655, 662, 471 P.2d 42, 49 (1970):

"The word 'credit' * * * implies the imposition of some new financial liability upon the State [here the City of Boise] which in effect results in the creation of State debt for the benefit of private enterprises."

*See also*: Engelking v. Investment Board, 93 Idaho 217, 458 P.2d 213 (1969). The purpose of such a prohibition is clear. Favored status should not be given any private enterprise or individual in the application of public funds. The proceedings and

debates of the Idaho Constitutional Convention indicate a consistent theme running through the consideration of the constitutional sections in question. It was feared that private interests would gain advantages at the expense of the taxpayers. This fear appeared to relate particularly to railroads and a few other large businesses who had succeeded in gaining the ability to impose taxes, at least indirectly, upon municipal residents in western states at the time of the drafting of our constitution. We are led to the firm conviction that only private interests were intended to fall within the strictures of those sections relating to "association," "corporation" and "joint stock company."

It is apparent that in the case at bar the evils sought to be prevented by the constitutional provisions in question do not exist. The plaintiff possesses no ability to impose taxes upon the residents of the City of Boise, nor may the plaintiff encumber any public assets to the advantage of private enterprise. Plaintiff, being a public and not a private enterprise, does not fall within the strictures and prohibition of Article 8, Section 4 and Article 12, Section 4 of the Idaho Constitution, and the action of the District Court in declaring that portion of I.C. § 50–2015 invalid and void because of conflict with these constitutional provisions is incorrect and is reversed.

■ Defendants next contend that the inclusion of certain buildings within the amended urban renewal plan area was in violation of Article 1, Sections 13 and 14 of the Idaho Constitution. They suggest that such buildings were not deteriorated and therefore not subject to condemnation. We note first that defendants do not contest the "use and necessity" of the condemnation of their particular property for the project, but rather assert that inclusion of non-substandard properties and structures authorizes a taking for other than public purposes. The point raised by defendants may be moot, but nevertheless, because of the broad public interest raised by the par-

ties and amicus curiae we discuss briefly plaintiff's contention.

The stipulated facts of this case indicate that of the 65 buildings located within the project area, 45 are deficient and defective, requiring clearance. Fourteen of the buildings located within the project area are deficient and defective with their rehabilitation highly questionable. One building located within the project area is sound but of a non-conforming use. One building within the area is sound and is of a conforming use; however, that building is to be retained intact in the project. Additionally, there are seven pieces of property with no buildings located thereon.

I.C. § 50–2018 sets forth the definition of certain terms in the Idaho Urban Renewal Act of 1965 and speaks of "deteriorated area" and "deteriorating area." The areas thus discussed are those in which "a predominance" of the structures and other improvements are deteriorating and defective or similar terms.

The definitions contained in I.C. § 50–2018 are, in our view, sufficiently precise to give adequate guidelines to the local governing body. As set forth in Berman v. Parker, *supra*, where a legislature (in that case, the Congress) in a non-arbitrary manner chooses the alternative of attacking an urban development problem on an area basis rather than structure by structure, such is a permissible methodology. *See*: Annotation, 44 A.L.R.2d 1414 and cases cited therein. The grant of eminent domain in our constitution, Article 1, Section 14, is extremely broad, and insofar as the use is public, property may be taken. The only qualification in that constitutional provision is that the use must be "necessary." As stated herein, defendants do not contest the use or necessity of their particular property, nor do they interpose any objection to the necessity of all other lots and structures being taken for the project but rather rest their objections solely on the basis that some of the structures were sound. It is clear that in such a project as

in the case at bar, broad areas must be cleared to effectively accomplish the objectives of the project and, subject to specific constitutional limitations, there is no bar to condemning areas rather than specific structures.

Defendants lastly contend that the authority granted the local governing bodies to make the required findings of fact under I.C. § 50–2005 constitutes an unlawful delegation of legislative power in violation of Article 3, Section 1 of the Constitution of Idaho. It is clear that the legislative power of the state is by our Constitution vested in the Senate and House of Representatives and it is a fundamental principle of representative government that, except as authorized by organic law, the legislative department cannot delegate any of its power to make laws to any other body or authority. Local Union 283, International Brogherhood of Electrical Workers v. Robison, 91 Idaho 445, 423 P.2d 999 (1967); State v. Purcell, 39 Idaho 642, 228 P. 796 (1924); State v. Nelson, 36 Idaho 713, 213 P. 358 (1923). It is also clear, however, as stated in Foeller v. Housing Authority of Portland, 198 Or. 205, 256 P.2d 752, 780 (1953), that:

> "Although the legislature cannot delegate its power to make a law or complete one, it can empower an agency or an official to ascertain the existence of the facts or conditions mentioned in the act upon which the law becomes operative.
>
> "'* * * If the rule were otherwise, the legislature would indeed be at a great disadvantage in solving many of the complex and difficult problems with which it is confronted.'
>
> "* * *
>
> "'The legislature must itself fix the condition or event on which the statute is to operate, but it may confide to some suitable agency the fact-finding function as to whether the condition exists, or the power to determine, or the discretion to create, the stated event. The nature of the condition is, broadly, immaterial.'"

We find that language of the Oregon Court to be persuasive in the case at bar. Herein, only a "fact-finding" status exists in the City of Boise under I.C. § 50–2005. We find that there are sufficient and adequate standards contained in that section, and particularly so when that section is read in combination with the language of Section 50–2018, containing the definitions of "deteriorating" and "deteriorated" areas. See also: 44 A.L.R.2d 1414.

The judgment of the District Court is correct and is affirmed save only as to that portion which declares a part of I.C. § 50–2015 to be in violation of the Idaho Constitution, which portion of the judgment of the District Court is reversed.

Costs to respondent.

McQUADE, C. J., McFADDEN and DONALDSON, JJ., and SCOGGIN, District Judge, concur.