2008 WY 89

**In the Matter of the Worker's Compensation Claim of Wilma FISHER, Surviving Spouse of David E. Fisher, an Employee of the Western Sugar Company:**

**Wilma Fisher, Appellant (Petitioner/Claimant),**

v.

**State of Wyoming, ex rel., Wyoming Workers' Safety and Compensation Division, Appellee (Objector/Respondent).**

No. S–07–0220.

Supreme Court of Wyoming.

July 30, 2008.

Representing Appellant: Larry B. Jones of Simpson, Kepler & Edwards, LLC, the Cody, Wyoming Division of Burg, Simpson, Eldredge, Hersh & Jardine, PC, Cody, Wyoming.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; and Kristi M. Radosevich, Senior Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1]  Appellant, Wilma Fisher (Mrs. Fisher), sought worker's compensation death benefits as the surviving spouse of her husband, David Fisher. He was seriously injured at work on October 1, 1993. Those injuries left him a paraplegic. On June 22, 2005, a fire occurred in the Fishers' home. Mr. Fisher

---

was rescued from the house, although he was unconscious from the effects of smoke inhalation. He was hospitalized for 19 days before he expired from pneumonia. His attending physician testified that Fisher died because his paraplegia rendered him unable to cough with sufficient force so as to expel the mucus that developed in his bronchi as a result of the smoke inhalation. Appellee, the Wyoming Workers' Safety and Compensation Division (Division), denied Mrs. Fisher's claim for death benefits on the basis that Mr. Fisher did not die as a result of the work-related injury. Mrs. Fisher requested a hearing, and a hearing examiner agreed with the Division's denial of benefits. Mrs. Fisher also appealed to the district court and it, too, affirmed the Division's denial of benefits. We conclude that there is not substantial evidence to sustain the hearing examiner's findings and, therefore, we will reverse and remand to the district court with directions that it further remand to the hearing examiner with directions that the applicable death benefits be awarded to Mrs. Fisher.

### ISSUES

[¶ 2] Mrs. Fisher raises these issues:

1. The decision of the hearing examiner, in denying benefits under W.S. § 27–14–403(e) (LexisNexis 2007), to the surviving widow was arbitrary, capricious, not otherwise in accordance with the law and unsupported by substantial evidence.

2. The work-related injuries of the deceased, David Fisher, were a direct cause of his subsequent death from smoke inhalation and pneumonia, the competent and sufficient evidence presented by [Mrs. Fisher] established such cause, and the conclusion of the hearing examiner, in interpreting and applying W.S. § 27–14–403(e) so as to deny [Mrs. Fisher] the benefits requested was arbitrary, capricious, [and] not otherwise in accordance with the law.

The Division contends that the hearing examiner's decision is in accordance with law.

### FACTS AND PROCEEDINGS

[¶ 3] The parties essentially agree that the facts in this case are not in dispute. It is the application of the governing law to those facts that has produced the controversy at hand. David Fisher suffered his debilitating injuries on October 1, 1993. Mrs. Fisher described her husband's injuries in these words, as in turn they had been described to her:

> They told me that it was about an 8 inch pipe by 10 or 15 feet long that hit him on the head and knocked him back against an iron railing. It was a big, thick, heavy iron railing and it bent it. It crushed his spinal cord and cut off his fingers and tore his aorta and gave him a very severe head injury.

[¶ 4] After suffering those injuries, Mr. Fisher was confined to a wheelchair during his waking hours, and he and his wife moved to Pocatello, Idaho, to be near family members who could help him and his wife with his care. In the early afternoon of June 22, 2005, Mr. Fisher went into his bedroom where he had a wheelchair-accessible worktable where he built model planes, trains, etc. He was 74 years old at that time. When Mr. Fisher emerged from that room a short time later, Mrs. Fisher noted thick smoke in the room. The exact cause of the fire was not determined, other than that it was accidental. Mrs. Fisher continued her narration of those events like this:

> I ran out and got my fire extinguisher, which was just right here close. I grabbed it and went in and couldn't see. I put a towel up to my face. I couldn't work the fire extinguisher with one hand. I could tell that it was getting out of hand.

> I said, come on, Dave, I've got to get you out of here. He said, I think I can put it out. Well, you know, his mind was not that clear, and he wouldn't come with me and the chair was too heavy for me to force him to come out. So I just ran out and went to the neighbor's to call the fire department.

> . . . .

> They came real quickly. They came in and found him and got him out. He was unconscious they said when they brought him out. He was conscious when I saw

him. They gave him oxygen and he kind of came around.

[¶ 5] Cross-examination of Mrs. Fisher revealed that Mr. Fisher had tried to get a glass of water from the bathroom so as to try to extinguish the fire and that his wheelchair was wedged in the hallway of his home when he was found by firefighters.

[¶ 6] As noted above, Mr. Fisher died on July 11, 2005, 19 days after he first suffered the effects of smoke inhalation. On August 23, 2005, the Division denied Mrs. Fisher's death benefits claim for the stated reason that: "The death certificate stated the cause of death to be pneumonia from smoke inhalation which is not related to the original injury to the spine. Wyoming Statute § 27–14–601(a)." That statute provides:

> (a) Upon receipt, the division shall review the initial injury reports to determine if the injury or death resulting from injury is compensable and within the jurisdiction of this act. No subsequent claim for compensation under this act shall be approved if the division determines the injury or death is not compensable and under the jurisdiction of this act or if the employer states on his injury report that the injury is not compensable, until a determination is rendered by the division. The division shall provide notice of its determination to the employee, employer and the claimant.

Wyo. Stat. Ann. § 27–14–601(a) (LexisNexis 2007).

[¶ 7] That response to Mrs. Fisher's claim was only partially accurate. A document entitled Certificate of Death, issued by the State of Idaho on August 17, 2005, indicates that Mr. Fisher died of "Pneumonia & Respiratory Failure." There is no indication that this document was received by the Division, although it appears in the record created by the agency. The Division did receive a second death certificate from the State of Idaho. It is date-stamped as received on both July 29, 2005, and August 11, 2005 (it was certified by the State of Idaho on July 19, 2005). That death certificate indicates that Mr. Fisher died from pneumonia of two days duration, secondary to smoke inhalation of two weeks duration, and included a notation to this effect, under "other . . . condi-

tions contributing to death:" "Paraplegia & respiratory muscle weakness."

[¶ 8] In a letter dated July 19, 2005, which is found in the record, but which is not date-stamped as to when it was received by the Division, Mr. Fisher's attending physician wrote:

> Mr. Fisher recently expired after a long hospital stay related to complications from smoke inhalation. He was in his train room at home when a fire began. When his wife found him, she tried to get him out of the room, but he would not cooperate and he was too heavy in the wheelchair for her to force him out. Family informs me that when the firemen got there they found him unconscious in the hall and his wheelchair was wedged in the hallway. He required mechanical ventilation for the prominent mucous production that resulted from the smoke inhalation and subsequently succumbed related to difficulty clearing the secretions. A prominent player in the difficulty clearing those secretions was his chronic weakness related to the paraplegia that happened as a result of a work accident back in the 1990's.

> In summary, the paraplegia was certainly not the cause of the fire, but his inability to recover from the smoke inhalation injury was directly related to his paraplegia.

## DISCUSSION

[¶ 9] We have not had occasion to address an issue quite like the one presented here before. In a case that has some parallels with the instant case, we held that: ". . . in order for death to be compensable, the initial injury must be the direct cause of the employee's death." *Workers' Safety and Compensation Division v. Bruhn*, 951 P.2d 373, 377 (Wyo.1997). In the *Bruhn* case, the employee died as the result of injuries suffered in an automobile accident that occurred when she was returning home from a doctor's appointment at which she received care for the injury that she suffered at work. *Id.* at 374. We rejected her arguments and our reasoning was this:

> As the division points out, it would be impossible to ever cut off compensability if

we were to adopt the hearing examiner's interpretation of the causation requirement. Would we compensate an employee who wrecked her car and died because she fell asleep at the wheel while she was on her way to see her doctor? Would we compensate an employee who was killed by a drunk driver while she was on her way home from her doctor's appointment? A logical end would not exist to the causation test which the hearing examiner proposes. Furthermore, it would lead to too many abuses, and the worker's compensation fund would, in effect, become a general health and accident insurance fund, a purpose for which it was not intended.(FN1)

A causal connection does not exist between the employee's initial injury and her car accident. The fact that she was returning from a doctor's appointment for an injury which she sustained while she was working at the Pamida Discount Store does not translate to a finding that the injury caused her death. Certainly, the accident which caused the employee's death did not occur because of her work related back injury. The accident was not a hazard of her employment that she would not have been subjected to apart from her job nor did it result from a risk reasonably incident to the character of the business. Rather, the accident resulted from a hazard that we are all equally exposed to—bad road conditions. Accordingly, we conclude that the hearing examiner's award of worker's compensation death benefits to the survivors of the employee was not in accordance with the Wyoming Worker's Compensation Act.

The hearing examiner's decision is reversed.

(FN1.) By way of dicta, we discussed the "quasi-course of employment" analysis in *Bearden v. State ex rel. Wyoming Workers' Compensation Division*, 868 P.2d 268 (Wyo.1994). Under this theory, injuries are compensable if they arise out of the following "quasi-course" activities:

"activities undertaken by the employee following upon his injury which, although they take place outside the time and space limits of the employment, and

would not be considered employment activities for usual purposes, are nevertheless related to the employment in the sense that they are necessary or reasonable activities that would not have been undertaken but for the compensable injury. 'Reasonable' at this point relates not to the method used, but to the category of activity itself."

868 P.2d at 270 (quoting 1 ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 13.11(d) at 3–542 (1993)). Given our interpretation of § 27–14–403(e), we expressly reject the "quasi-course of employment" theory of recovery. We instead hold that, in order for a second injury to be compensable, the original compensable injury must itself be the direct cause of the subsequent injury.

*Bruhn*, 951 P.2d at 377.

[¶ 10] The above citation to Professor Larson's treatise is now found in 1 Larson's Workers' Compensation Law, § 10.05, 10–12 (2007) where this pair of principles is articulated:

When the injury following the initial compensable injury arises out of quasi-course activity, such as a trip to the doctor's office, the chain of causation should not be deemed broken by mere negligence in the performance of that activity, but only by intentional conduct which may be regarded as expressly or impliedly prohibited by the employer.

When, however, the injury following the initial compensable injury does not arise out of a quasi-course activity, as when a claimant with an injured hand engages in a boxing match, the chain of causation may be deemed broken by either intentional or negligent claimant misconduct.

[¶ 11] We conclude that the reasoning we employed in *Bruhn* is readily distinguishable from the circumstances of this case, and we decline to apply its very limited scope to this case where there is a direct link between Fisher's work-related injury and his death.

[¶ 12] As suggested in *Bruhn*, there are some peripheral statutory construction issues involved here (and, of course, those are matters of law that we review *de novo* ). Howev-

er, here we must apply the standard of review that we routinely apply to cases such as this which we have restated in great detail in *Dale v. Wyoming Worker's Safety and Compensation Division,* 2008 WY 84, ¶¶ 8–27, 188 P.3d 554, 557–562 (Wyo.2008). The issue raised by Fisher invokes only application of the substantial evidence prong of our standard of review.

[¶ 13] Wyo. Stat. Ann. § 27–14–102(a)(xi) (LexisNexis 2007) defines "injury" as follows: " 'Injury' means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement *and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business.*" [Emphasis added.]

[¶ 14] Wyo. Stat. Ann. § 27–14–403(e) (LexisNexis 2007) provides:

(e) *If an injured employee dies as a result of the work related injury* whether or not an award under paragraphs (a)(i) through (iv) of this section has been made:

(i) All awards under paragraphs (a)(i) through (iv) of this section shall cease as of the date of death;

(ii) The burial expenses of the deceased employee shall be paid in an amount not to exceed five thousand dollars ($5,000.00) together with an additional amount of five thousand dollars ($5,000.00) to cover other related expenses, unless other arrangements exist between the employer and employee under agreement;

(iii) The surviving spouse shall receive for fifty-four (54) months a monthly payment as provided by subsection (c) of this section. If the surviving spouse dies before the award is entirely paid or if there is no surviving spouse, the unpaid balance of the award shall be paid to the surviving dependent children of the employee in the manner prescribed by paragraph (d)(ii) of this section. If there are no dependent children, further payments under this paragraph shall cease as of the date of the spouse's death;

(iv) In addition to any amount paid under paragraph (e)(iii) of this section, surviving children shall receive an award as provided by subsection (b) of this section;

(v) If the employee died with no surviving spouse or dependent children but with one (1) surviving parent of the employee who received substantially all of his financial support from the employee at the time of injury, the surviving parent shall receive six hundred dollars ($600.00) the first month after the death and one hundred fifty dollars ($150.00) for thirty (30) months thereafter or until the parent dies, whichever is less. If two (2) remaining parents of the employee who received substantially all of their financial support from the employee at the time of the injury survive the employee and the employee had no surviving spouse or child, they shall receive six hundred dollars ($600.00) the first month after the death and two hundred dollars ($200.00) for thirty-two (32) months thereafter or until both parents die, whichever is less. [Emphasis added.]

[¶ 15] Wyo. Stat. Ann. § 27–14–509 (LexisNexis 2007) provides:

§ 27–14–509. **Autopsy may be required; procedure.**

Upon the filing of a claim for compensation for death for which an autopsy is necessary to accurately and scientifically ascertain and determine the cause of death, a hearing examiner may order an autopsy. The hearing examiner may designate a licensed physician who is a specialist in autopsies to perform or attend the autopsy and to certify his findings. The autopsy findings are a public record and shall be filed with the division. The hearing examiner may exercise the authority on his own motion or on an application made to him at any time by any party in interest upon the presentation of facts showing that a controversy may exist in regard to the cause of death or the existence of any compensable injury. All proceedings for compensation shall be suspended upon refusal of a claimant or his representative to permit an autopsy when

ordered and no compensation shall be payable during the continuance of the refusal.

[¶ 16] The question directly proposed to us here is whether or not Mr. Fisher's death was the result of his paraplegia. We conclude that "result" is used in its most general sense, and in this context, it simply means "something that results as a consequence, effect, issue, or conclusion <suffer from the [results] of war> <the causes and [results] of sleeping sickness>." *Webster's Third New International Dictionary,* 1937 (1986); also see "result," 37A Words and Phrases, 423–24 (2004). The testimony at trial was uncontradicted that it was the paraplegia that resulted in Mr. Fisher's death and that but for the effects of his workplace injury, he most likely would have fully recovered from the effects and consequences of the smoke inhalation. *Bradford v. Workers' Compensation Com'r,* 185 W.Va. 434, 408 S.E.2d 13, 20–21 (1991).

[¶ 17] There is a good bit of case law that speaks to the circumstances of this case. For instance, in the case *Gerhardt v. Welch,* 267 Minn. 206, 125 N.W.2d 721, 722–25 (1964), the reviewing court noted that there was no evidence pointing to why the decedent did not escape the fire in his home, but the dictum suggested that if decedent had been unable to escape the fire because of a compensable back injury suffered three years earlier, his dependents would have been entitled to compensation. See 1 Larson's Workers' Compensation Law, *supra,* § 10.04, fn. 9. In a case where a bedridden injured worker died from a fire that he was, perhaps, unable to escape due to his injuries, a majority of the reviewing court concluded that the fire was an intervening cause of the worker's death and was not compensable. *Skrobosinski v. Champion International Corporation,* 1986 WL 9707 (Ohio App. 12 Dist.). The distinction between that case and this is that the worker died in and from the fire. In the instant case, Mr. Fisher did not die from the fire, but from his inability to expel mucous from his lungs as a result of the paraplegia caused by his industrial accident. In the case *Drake v. State Department of Social Welfare–Larned State Hospital,* 210 Kan. 197, 499 P.2d 532, 534–39

(1972), the worker at issue injured his back, but that injury did not lead to his death. Rather, the pain from the back injury "... made it extremely difficult for him to cough and to clear his lungs. The condition was so aggravated that he was forced to enter the hospital for severe respiratory distress and back pain and was making a recovery when a complication set in and he died from the combined results." *Id.* at 534. The appellate court affirmed the district court's award of benefits (which had been denied by the hearing examiner). In *Johnson v. Industrial Commission,* 148 Colo. 561, 366 P.2d 864, 865 (1961), death benefits were awarded where the worker died of bacterial pneumonia secondary to on-the-job injuries he suffered "which caused him pain and that the pain of the injury kept him from coughing and clearing out his bronchi."

[¶ 18] These sorts of cases present difficult questions and, as is almost always the case in this setting, turn on the facts available to reviewing courts from the record on appeal. Here, the evidence of record is unequivocal that Mr. Fisher died because his paraplegia severely reduced his ability to cough and to clear his bronchi of mucus. That evidence stands uncontradicted. We apply those facts in light of the plain language of the governing statute, i.e., "[if] an injured employee dies as a result of the work[-]related injury ....," and we conclude that the only sustainable answer that can be reached, based on the record on appeal, is that Mr. Fisher did die as a "result" of his work-related injury.

## CONCLUSION

[¶ 19] The order of the district court affirming the hearing officer's denial of benefits is reversed, and this matter is remanded to the district court with directions that it further remand it to the hearing officer with directions that the applicable death benefits be awarded to Mrs. Fisher.