IN THE SUPREME COURT OF THE STATE OF IDAHO

Docket No. 35435

| | | |
|---|---|---|
| URBAN RENEWAL AGENCY OF THE CITY OF REXBURG, | ) ) ) | Twin Falls, November 2009 Term |
| Petitioner-Respondent, | ) ) | 2009 Opinion No. 141 |
| v. | ) ) | Filed: November 25, 2009 |
| KENNETH W. HART, an interested party, | ) ) | Stephen Kenyon, Clerk |
| Appellant. | ) ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Madison County. Hon. Brent J. Moss, District Judge.

The decision of the district court is affirmed.

Runft & Steele Law Offices, PLLC, Boise, for appellant. John Runft argued.

Elam & Burke, P.A., Boise, for respondent. Ryan Armbruster argued.

---

HORTON, Justice

This is an appeal from a district court's decision confirming the validity of revenue allocation bonds. The Urban Renewal Agency of the City of Rexburg (the Agency) petitioned the district court for judicial confirmation of the validity of bonds the Agency wishes to issue to Zions Bank Public Finance (Zions) for the purpose of financing construction of the Riverside Park Urban Renewal Project (the Project). Kenneth W. Hart, a citizen of Rexburg, Idaho, challenged the petition on grounds that issuance of the bonds would violate the prohibitions against municipal indebtedness and lending of credit found in the Idaho Constitution. The district court rejected Hart's arguments and confirmed the validity of the bonds. Hart timely appealed. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 21, 2005, the City Council of the City of Rexburg (the City) adopted Ordinance No. 950, which approved the Agency's plan to construct the Project and finance it by using revenue allocation financing. On December 4, 2007, the Agency adopted a resolution

authorizing the issuance of revenue allocation bonds and a bond purchase agreement. Under the agreement, the Agency would issue and sell revenue allocation bonds to Zions, in a principal amount not to exceed $6,300,000.00, in order to finance the Project.

Pursuant to the Judicial Confirmation Law, I.C. § 7-1301 *et seq.*, on February 13, 2008, the Agency filed a petition seeking judicial confirmation of the validity of the resolution, the bond purchase agreement, and the bonds to be issued thereunder. The Project calls for the acquisition of land and construction of a public outdoor swimming facility, including dressing facilities, an access road, parking facilities, and related furnishings and improvements; construction and furnishing of a building for sporting and community events; and installation of outdoor fields for soccer, football, baseball, and other public recreation purposes, and related improvements.

The Agency asked the district court to consider its petition "in light of" 11 issues, including whether the proposed revenue allocation financing scheme, designed pursuant to the Local Economic Development Act (the Act), I.C. § 50-2901 *et. seq.*, violates the prohibitions on municipalities lending credit, found in Article VIII, § 4 and Article XII, § 4 of the Idaho Constitution, and whether it further violates Article VIII, § 3, which prohibits a municipality from incurring an indebtedness or liability exceeding income and revenue for a specific year without the assent of qualified electors. On March 28, 2008, Hart, appearing pro se, filed his Response to Petition for Judicial Confirmation, asking that the Agency's petition be denied. Hart's Response was in the form of a legal memorandum in opposition to the Agency's request for relief. Of the 11 potential issues identified by the Agency in its petition, Hart addressed only two, asserting that the Act violates Article VIII, §§ 3 and 4 of the Idaho Constitution. The district court rejected Hart's arguments and granted the Agency's petition, thereby confirming the validity of the resolution, the bond purchase agreement, and the bonds that the Agency proposed to sell to Zions. Hart timely appealed. Nine urban renewal agencies (collectively referred to as the Agencies) have filed a brief as *amici curiae* urging us to affirm.

## II. STANDARD OF REVIEW

"Constitutional issues are questions of law over which we . . . exercise free review." *City of Boise v. Frazier*, 143 Idaho 1, 2, 137 P.3d 388, 389 (2006).

> The party asserting the unconstitutionality of a statute bears the burden of showing its invalidity and must overcome a strong presumption of validity. It is generally presumed that legislative acts are constitutional, that the state legislature

has acted within its constitutional powers, and any doubt concerning interpretation of a statute is to be resolved in favor of that which will render the statute constitutional.

*Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 709, 791 P.2d 1285, 1288 (1990) (citations omitted).

### III. ANALYSIS

The constitutional provisions that Hart argues the Act violates are limitations on actions by municipalities. The only action taken directly by the City in this case was the passage of Ordinance No. 950, and Hart did not challenge the enactment of this ordinance in a timely manner.[1] Thus, we consider only whether the district court erred in confirming the validity of the Agency's resolution approving the bond purchase agreement and authorizing the issuance of revenue allocation bonds, the bond purchase agreement, and the bonds that the Agency proposes to sell to Zions.

In his answer to the Agency's petition for judicial confirmation, Hart argues that an urban renewal agency's use of revenue allocation financing is really action by a city – that agencies are merely "alter egos" of their cities – and thus urban renewal agencies' use of revenue allocation financing violates Article VIII, §§ 3 and 4 of the Idaho Constitution.[2] We disagree and affirm the decision of the district court.

**A. Urban renewal agencies are not the "alter egos" of cities, and thus the Act's authorization of agencies' use of revenue allocation financing does not violate Article VIII, §§ 3 and 4.**

---

[1] Many of Hart's arguments are challenges to the City's enactment of Ordinance No. 950. We are not free to reach the merits of his challenges to the ordinance. The Act provides that "any person in interest shall have the right to contest the legality" of an ordinance authorizing revenue allocation bonds only "[f]or a period of 30 days after the effective date of the ordinance." I.C. § 50-2911. The statute further provides that

> [n]o contest or proceeding to question the validity or legality of any ordinance . . . passed or adopted under the provisions of this chapter shall be brought in any court by any person for any cause whatsoever, after the expiration of thirty (30) days from the effective date of the ordinance . . . and after such time the validity, legality and regularity of such ordinance . . . shall be conclusively presumed. If the question of the validity of any adopted plan . . . is not raised within thirty (30) days from the effective date of the ordinance . . . the same shall be conclusively presumed and no court shall thereafter have authority to inquire into such matters.

I.C. § 50-2911. This statute is consistent with I.R.C.P. 84(n), which provides that the failure to timely seek judicial review "shall be jurisdictional."

Ordinance No. 950 became effective on the date of its publication, December 23, 2005. Hart did not challenge the City's adoption of the ordinance until March 28, 2008, more than two years after the 30 day deadline prescribed by I.C. § 50-2911 had expired.

[2] On appeal, Hart also asserts that the Act violates Article XII, § 4 of the Idaho Constitution. However, because he failed to raise this issue before the district court, we decline to consider it. *Johannsen v. Utterbeck*, 146 Idaho 423, 429, 196 P.3d 341, 347 (2008).

Revenue allocation financing under the Act begins when a city designates a deteriorated area within its limits as a revenue allocation area; the city's urban renewal agency then issues bonds to finance the economic growth and development of that area according to an urban renewal plan; and any resulting increase in the taxes collected on the property in that area is allocated to the urban renewal agency, which in turn uses that money to retire the bond obligations. I.C. § 50-2901 *et seq.* The Act does not require assent of two-thirds of the qualified electors in order for an agency to employ revenue allocation financing; indeed, no voter action is required at all. Hart argues that the use of revenue allocation financing without voter approval violates the constitutional prohibition against a city "incur[ring] any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof . . . ." Idaho Const. art. VIII, § 3. Hart further argues that revenue allocation financing violates the prohibition found in Article VIII, §4 that "[n]o . . . city . . . shall lend, or pledge the credit or faith thereof . . . ." Hart argues that because cities exercise so much control over urban renewal agencies, when agencies issue revenue allocation bonds, it is in fact cities that are engaging in revenue allocation financing and thus these provisions of Article VIII are violated.

The Appellants in *Boise Redevelopment Agency v. Yick Kong* made this same "alter ego" argument, urging that the urban renewal agency in that case was merely the "alter ego" of the City of Boise and therefore the agency's issuance of revenue bonds violated Article VIII, §§ 3 and 4. 94 Idaho 876, 880-81, 499 P.2d 575, 579-80 (1972). In a unanimous decision, this Court held that

> [t]he legislature, in what we may assume to be an effort to maintain some local voice in the question of whether a particular municipality had a need for urban renewal, required a finding of need by a municipality prior to the time an urban renewal agency could come into existence. While the particular city may trigger the existence of the [urban renewal agency], it cannot control its powers or operations. Again, while the legislature may have sought to allow a local voice in the selection of the commissioners of the [urban renewal agency], there is no attack upon the integrity or independence of the commissioners of the [urban renewal agency] and we cannot say that [the] appointment procedures cause inherent control in the City. Neither does the provision for removal of commissioners necessarily show any such control by the City. The removal procedures are not arbitrary, nor are they solely in the discretion of the City. Removal can result only after hearing and consistent with the exact standards set forth in [the Idaho Urban Renewal Law of 1965].

> We conclude that the statutory provisions allowing a local voice in the creation of the [urban renewal agency] do not result in a finding that [the urban renewal agency] is simply the alter ego of the City . . . . The degree of control exercised by the City . . . does not usurp the powers and duties of the [urban renewal agency], and the close association between the two entities at most shows two independent public entities closely cooperating for valid public purposes.

94 Idaho at 881-82; 499 P.2d at 580-81 (footnote omitted). Hart acknowledges our holding in *Yick Kong*, but urges that two amendments to the Idaho Urban Renewal Law of 1965 (the Law), I.C. § 50-2001 *et. seq.*, enacted after we decided *Yick Kong* and regarding the make-up of the board of commissioners of an urban renewal agency, render the holding in that case inapposite and require this Court to conclude that revenue allocation financing under the Act is unconstitutional.

Four years after our decision in *Yick Kong*, the Legislature amended I.C. § 50-2006(b) to provide that by enactment of an ordinance, the local governing body may initially appoint and designate itself to be the board of commissioners of the urban renewal agency or may terminate the existing board and install itself as the board. 1976 Idaho Sess.Laws, ch. 256, p. 872. Ten years after that, the Legislature amended I.C. § 50-2017 by deleting language that prohibited a "commissioner or other officer of any urban renewal agency. . . [from holding] any other public office under the municipality other than his commissionership or office with respect to such urban renewal agency." 1986 Idaho Sess.Laws, ch. 10, p. 52. Hart argues that, as a result of these amendments, there is now no real difference between the municipality and the urban renewal agency, i.e., that the urban renewal agency is the "alter ego" of the municipality. Thus, he argues, when the agency finances urban renewal through revenue allocation financing, its conduct violates the constitutional limitations on municipal conduct found in Article XIII, §§ 3 and 4.

The 1976 amendment to I.C. § 50-2006(b)(2), upon which Hart relies, provides that even if the city governing body does appoint itself, the commissioners "shall, in all respects when acting as an urban renewal agency, be acting as an arm of state government, *entirely separate and distinct from the municipality*, to achieve, perform and accomplish the public purposes prescribed and provided by said urban renewal law of 1965, and as amended." 1976 Idaho Sess. Laws, ch. 256, p. 872 (emphasis added). The removal procedures set forth in the Law remain unchanged since our decision in *Yick Kong*. I.C. § 50-2006(b)(1) ("For inefficiency or neglect of duty or misconduct in office, a commissioner may be removed only after a hearing and after he

shall have been given a copy of the charges at least ten (10) days prior to such hearings and have had an opportunity to be heard in person or by counsel.")  Even as amended, the Law does not allow a city to usurp the powers and duties of the urban renewal agency.  Thus, we conclude that the amendments to I.C. § 50-2006 and 50-2107 do not permit us to distinguish the holding in *Yick Kong*.

The Agencies' brief demonstrates that cities across the State have financed over 60 projects through revenue allocation financing in the 27 years since we decided *Yick Kong*.  This widespread reliance on our holding that urban renewal agencies are not "alter egos" of cities is well-justified, given that the decision was unanimous.  94 Idaho at 885, 499 P.2d at 584.  If we were to accept Hart's argument that urban renewal agencies are merely alter egos of their respective municipalities, we would overrule unanimous, long-standing precedent and thwart the reasonable expectations of numerous bondholders.  We are unable to conclude that our decision in *Yick Kong* is "manifestly wrong."  Accordingly, "'the rule of stare decisis dictates that we follow it . . . .'" *Greenough v. Farm Bureau Mut. Ins. Co. of Idaho*, 142 Idaho 589, 592, 130 P.3d 1127, 1130 (2006) (quoting *Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 77, 803 P.2d 978, 983 (1990)).

For these reasons, we hold that under the Law, as amended, urban renewal agencies are not the "alter egos" of cities.  Therefore, the Act's grant of authority to urban renewal agencies to issue revenue allocation bonds does not violate Article VIII, §§ 3 or 4 of the Idaho Constitution.

## B. The Agency is not entitled to attorney fees.

The Agency asks for an award of attorney fees on appeal under I.C. § 12-121.  "This Court will award fees under § 12-121 to the prevailing party only when an appeal is brought, pursued or defended frivolously, unreasonably or without foundation." *Nerco Minerals Co. v. Morrison Knudsen Corp.*, 132 Idaho 531, 536, 976 P.2d 457, 462 (1999).  The Agency urges that the law in this area is well-settled, that Hart has failed to show how the district court misapplied it, and therefore his appeal is frivolous.  Although it is true that *Yick Kong* is a decades-old decision and controls the resolution of this case, we have not previously considered the constitutionality of the Act or the effect of the amendments to the Law on our holding in *Yick Kong*.  Thus, we do not find Hart's appeal raising these issues to be frivolous and decline to award the Agency attorney fees.

## IV. CONCLUSION

Urban renewal agencies are not the "alter egos" of cities under the Law, and thus an agency's issuance of revenue allocation bonds does not violate Article VIII, §§ 3 or 4 of the Idaho Constitution. Costs, but no attorney fees, to the Agency.

Chief Justice EISMANN and Justices BURDICK, J. JONES and W. JONES **CONCUR**.